GEORGE MILLER, ASSIGNEE OF WILLIAM B. TRAVIS, *v.* JAMES A. ESTILL ET AL.

T. was doing business as a merchant. E. & B. were also doing business as merchants, under the firm name of E. & B. T. and E. & B. united their stocks, and formed a partnership, under the name of T. E. & Co. T. afterward dissolved the partnership by an assignment of his interest and property in the firm of T. E. & Co., to M. as trustee for the benefit of personal creditors ; and afterward, through M. the trustee, received his portion of the capital stock from E. & B., with a stipulation on the part of E. & B. that they would pay the partnership debts. E. & B. afterward did business as the firm of E. & B., and then made an assignment of their partnership and personal assets to a trustee for the benefit of the creditors of E. & B. Held :

1. That T. could not assert a primary lien for the payment of the partnership debts of T. E. & Co. upon the property of the firm of T. E. & Co., retained by E. & B., and assigned by them to their trustee.

2. When the primary right of partners to apply the partnership property in extinguishment of the partnership debts is gone, the right of the partnership creditors to enforce the application of the property of the firm to the payment of their debts is also extinguished.

3. When a firm is dissolved, and the property and assets divided between the partners, the individual members cannot, in contemplation of insolvency, make an assignment of their property, both individual and of that which was derived from the firm, for the benefit of individual creditors, to the exclusion of firm creditors. The statute relating to assignments, will operate upon such an assignment, and effect an equality.

4. The funds in the hands of the trustee of T., must be distributed pro rata among the creditors of T. and of T., E. & Co., and the funds in the hands of the trustee of E. & B. must be distributed pro rata among the creditors of T., E. & Co., and of E. & B.

5. If any balance of the funds of E. & B. remains after paying the debts of T., E. & Co., and E. & B., the same may be applied to reimburse T., under the stipulation of E. & B., that the latter would pay the debts of T., E. & Co.

IN error to the District Court of Columbiana county.

The record shows the following state of facts :

Prior to the first of August, 1854, William B. Travis had been engaged, on his own account, in the dry goods mercantile business, in the town of New Lisbon. James A. Estill and Lewis Beebout, under the style of Estill & Beebout, were also engaged in the same business at the same time and place. On the first of August, 1854, Travis, and Estill & Beebout, entered into an arrangement by which they combined their two several stocks of goods, and formed a new firm under the name of Travis, Estill & Co., Travis with an interest of one-half, and Estill & Beebout with an interest of one-half. An inventory of the two several stocks of goods was then taken, and that of Travis amounted to about $3,932, and that of Estill & Beebout to $3,650. This was the capital stock of each, and the goods were all removed to the store room before that time occupied by Travis, and the new firm started in its business. About one month after this, Estill went east to purchase new goods for the firm, taking with him about eight hundred dollars in money, which had been borrowed, and for which the firm notes of Travis, Estill & Co., had been given. This money Estill did not use in purchasing goods for the firm, but, in accordance with the partnership agreement, applied it in payment of the old debts of Estill & Beebout.

While in Philadelphia, Estill purchased about twenty-three hundred dollars worth of goods on credit, and in the name of Travis, Estill & Co.

On the 7th day of September, 1854, Travis made a general assignment to George Miller, of all his real and personal property, together with his interest in the stock of goods and merchandise of the firm of Travis, Estill & Co., and firm assets ; authorizing him to dispose of the same, and pay over the proceeds to the creditors of Travis. At this time, Travis, Estill & Co., were indebted about thirteen hundred dollars.

On the 12th day of September, Estill returned from Philadelphia, and, finding the whole stock of goods of Travis, Estill & Co., levied upon, on certain executions against Travis, he imme-

diately made arrangements with the parties from whom he had purchased the goods for Travis, Estill & Co., in Philadelphia, to take them back and cancel the indebtedness for the purchase money.

An agreement was also made between Travis, Estill, Beebout and Miller, the assignee of Travis, by the terms of which Miller was to receive from the capital stock of Travis, Estill & Co., goods of the value of those Travis had put into the partnership, and as near as practicable the same goods, and Estill & Beebout were to retain the balance of the partnership property, and pay the partnership debts.

Under this arrangement, Miller, the plaintiff in error, received $3,442 worth of the partnership goods. He claimed more, which Estill & Beebout, alleging that that amount was larger than the amount Travis had invested in the partnership, refused to give.

James A. Estill and Lewis Beebout, after this agreement was made, continued business in New Lisbon, under the name of Estill & Beebout, until the 22d day of September, 1854, when they made an assignment to Samuel W. Beebout, one of the defendants in error. This assignment was made by Estill and Beebout as partners, under the name and firm of Estill & Beebout, existing at that time, and transfers to the assignee, Samuel W. Beebout, the stock of goods and assets of the firm, and the personal property and assets of the individual members of .the firm, in trust, from the proceeds " to pay over to the creditors of said firm, all money he shall receive for said stock of goods, in proportion to their respective claims ; and if there should be any surplus left, after paying all expenses, etc., and the debts of said firm, to pay such surplus to said Estill & Beebout, or their order."

On the 25th of September, 1854, Miller, the plaintiff in error, filed his petition in the court of common pleas, to compel a specific performance of the agreement of Estill & Beebout to pay the firm debts of Travis, Estill & Co., and for other purposes ; and, upon the prayer of the petition, the court appointed Samuel Small receiver, etc., and ordered him to take possession of the effects in the hands of Samuel W. Beebout, held by him under the assignment of Estill & Beebout.

The plaintiff in error, and the receiver, sold the stocks of goods in their hands, at forced sales, and at great sacrifices; collected the debts, etc., and now hold the proceeds for distribution.

The district court, at its May term, 1855, rendered final judgment, ordering Miller, the plaintiff in error, to distribute the funds in his hands, pro rata, among the creditors of Travis, and of Travis, Estill & Co., and also ordering the receiver to distribute the funds held by him among the creditors of said firm of Travis, Estill & Co., and of Estill & Beebout. The claim of Travis against Estill & Beebout for the balance of the amount he alleged he had put into the capital stock of Travis, Estill & Co., and which he claimed was not withdrawn by plaintiff in error, was disallowed, and the latter and the receiver were ordered, each, to pay one-half the costs of the suit.

To reverse this judgment, this petition in error is filed.

*John M. Gilman,* for plaintiff in error:

We think the court erred

1st. In its order for the distribution of the funds in the hands of the plaintiff as assignee, and Small as receiver.

2d. In ordering the funds to be distributed among the creditors named in the reports of the assignee and receiver, without including others that might not be named in the reports.

3d. In not allowing the claim of Travis, against the firm of Travis, Estill & Co.

4th. In ordering the assignee and receiver, each, to pay one half of the costs of the case.

It is evident at a glance, that, by the judgment rendered in this case in the district court, Estill & Beebout get the benefit of the *entire consideration* for all the indebtedness of the firm of Travis, Estill & Co., while the plaintiff is compelled to pay, from the assets of Travis in his hands, a proportionate share of that indebtedness. Estill & Beebout used all the money that was borrowed in firm name to pay their own private liabilities, and they also got all the goods and other articles purchased by the firm during its existence. They also got the accounts, claims, and the entire profits and benefits of all the business done by the

firm.    Every thing of this kind passed into the hands of Small, the receiver; and, under the order of the court, Estill & Beebout reap the entire benefit of it.

Had there been no agreement between the plaintiff and Estill & Beebout, for the purpose of ascertaining and separating the interest of Travis in the firm, the law would have determined the matter, by first ordering that the creditors of the firm be paid out of the firm property; then, that the accounts between the partners themselves be adjusted and settled; and that, of the assets, the proportionate share of each should be handed over to the respective assignees for distribution among the creditors, according to the trust.    Had this course been pursued, a statement of the accounts between the partners would have brought Estill & Beebout largely indebted to the firm, after paying the partnership liabilities, for the reason, that they had used the money which occasioned the firm liabilities, to pay their own private debts.    The result would have shown the interest of Travis to be somewhat more than the amount the plaintiff was to receive by virtue of the agreement.    But the agreement between the plaintiff and Estill & Beebout, rendered a statement of the accounts between the partners unnecessary, and avoided trouble, expense and delay.

The parties had an undoubted right to make such an agreement, if done in good faith.    They had a right to agree upon the interest of each in the concern, and also to agree upon the mode and manner of separating their respective interests.    The legal effect of the acts of the parties was, that Estill & Beebout should purchase out the interest of Travis in the concern; they taking all the stock and effects, and paying for the interest of Travis a certain amount in goods, and agreeing to pay all the debts due from the firm.    This did not divest the partnership creditors of their equitable right to be first paid out of the partnership property.    And in all such cases, if there is danger that the property will be used for other purposes, leaving the partnership debts unpaid, a court of equity will always interfere on application, and direct the firm debts to be paid out of the property, according to the agreement of the parties.    I would ask the attention of the

court to the case of *Deveau* v. *Fowler*, 2 Paige's Ch. Rep. 400, which is very analogous to the present case. See, also, 2 Barb. Sup. Ct. Rep. 625; 4 Ib. 571; *Wildes* v. *Chapman*, 4 Ewd. Ch. 669; *Payton* v. *Lewis*, 12 B. Mon. 356; *Sadam* v. *Williams*, 4 McLean 51.

We think, therefore, that the plaintiff should be ordered to distribute the assets in his hands among the creditors of William B. Travis, and that the receiver should be ordered to pay, first, the partnership creditors, and then distribute the balance in his hands among the creditors of Estill & Beebout. It may be said, that this will leave but a small amount for distribution among the creditors of Estill & Beebout. This is true, but it is occasioned by the fact, that Estill & Beebout withdrew most of their interest in the firm, and used it to pay some of their creditors in full, which they seemed to prefer. It is but the ordinary case of a man who, in insolvent circumstances, pays some of his creditors in full, leaving little or nothing for others.

Second. We think the court erred in confining the distribution of the assets to the creditors named in the reports of the plaintiff and the receiver. There may be, and in fact are, many creditors who did not hand in their claims, and therefore are not included in the reports. The order for distribution should have been general, and not special.

Third. The court erred in disallowing the claim of Wm. B. Travis, against Travis, Estill & Co. It was a valid claim against the firm, and, under the agreement, should stand upon the same footing as any other claim against that firm. See *Hobart* v. *Howard*, 9 Mass. 304.

Fourth. We also claim that there was error in ordering the assignee and receiver, each, to pay one half the costs of the case. We bring the suit to enforce the specific performance of an agreement, and if we succeed, costs should follow the judgment.

*Brewer & Wisden*, for defendants in error.

The first error assigned is, " that the court erred in its order for the distribution of the funds in the hands of the plaintiff in error, and the receiver." Did the court err in this? An ex-

33

amination of the legal and equitable rights of the parties and of their creditors, after the assignment of Travis to the plaintiff in error, and agreement between him and Estill & Beebout for the withdrawal of the interest of Travis from the firm of Travis, Estill & Co., we think will determine this. What were those rights? The assignment of Travis dissolved the partnership and vested his interest in the plaintiff in error, who became a tenant in common with Estill & Beebout in the partnership goods. 3 Kent 59. *Murray* v. *Murray*, 6 Johns. C. Rep. 60. The partnership property was primarily liable to pay the partnership debts, and the surplus, if any, belonged to the partners, according to their respective interests. The liability of the partnership effects to pay the partnership debts, arises from the *equity of the partners*, who have a lien upon the partnership property, which they may directly enforce to pay the partnership debts. The creditors, however, of the partnership have no such lien; their *equity* is the *equity* of the *partners* operating to the payment of the partnership debts. 3 Kent 65; *Belknap* v. *Cram et al.*, 11 Ohio Rep. 412; *Grosvenor & Co.* v. *The Administrators of S. Austin et al.*, 6 Ohio Rep. 113. It follows, as a necessary consequence, that when the equities of the partners themselves to apply the partnership property in extinguishment of the partnership debts are gone, the right of the partnership creditors thus to apply it is also divested. This equity of the partners is lost, when by their acts bona fide the partnership property ceases to be their joint property. The partners have then no equitable lien upon it for the payment of the partnership debts, and the equities of the creditors, which can only be enforced through the equities of the partners, are gone. The contract made between the plaintiff in error, Travis, Estill & Beebout, for the payment of the debts of Travis, Estill & Co. by Estill & Beebout, and the withdrawal of the interest of Travis in the partnership property, divested the plaintiff in error of a *lien* upon the goods left in the hands of Estill & Beebout, and destroyed the right of the creditors of Travis, Estill & Co. to enforce such lien. The subsequent assignment of this property by Estill & Beebout, under the statute, places all their creditors,

both individual and partnership, upon an equality, and if it should prove insufficient to pay their debts, the loss must fall upon all their creditors alike. The counsel for the plaintiff in error argues that this agreement did not divest the partnership creditors of their equitable right to be first paid out of the partnership property. If the property was in the hands and under the control of the partners themselves, a court of equity, upon a proper application, might apply it to the payment of the partnership debts; but here the property has passed beyond their control, and the rights and equities of other creditors have intervened. While the partnership was in force, either party could have made a bona fide payment of his own debt out of the partnership fund, and after the dissolution, by the consent and cooperation of all the partners, like payment might have been made. The assignment of Estill & Beebout has given all their creditors a vested interest in the property assigned; they were the owners of that property—had it in their possession—and their act has given their individual creditors a right to share in the proceeds which can no more be divested than the property itself could be recovered had they received it by the consent of all the partners in the payment of their claims. The doctrine of the cases, so far as we have examined them, cited by the counsel for the plaintiff in error, does not militate against these positions.

The sale by Estill & Beebout to plaintiff in error of partnership goods to the amount of the interest of Travis in the partnership property was bona fide, and the agreement contemplated the payment of the firm debts of Travis, Estill & Co. This agreement did not give the plaintiff in error any lien upon the goods, etc., left in the hands of Estill & Beebout; by the very terms of the contract, he waived all lien. They were to give him security that they would pay the firm debts. Their failure to comply with this provision gave him a right of action for damages, but did not entitle him to the possession of the goods. His lien being waived, the equitable right of the partnership creditors to payment out of the partnership property is gone, and the assignment of Travis, and of Estill & Beebout, having

placed all their creditors, both individual and partnership, upon an equality, giving them a right to be paid pro rata out of the trust funds, we think that there is no error in the judgment of the district court, in the first assignment of the petition in error.

The doctrine that partners have a right to convert their joint into separate estate, or *vice versa*, by a bona fide sale to each other, and that such sale defeats the right of the partnership creditors to an equity in the partnership funds for the payment of their claims, is fully recognized by Mr. Justice Story in his work on Partnership; "and this is equally true," says the learned commentator, " although the whole or a part of the consideration of the transfer is, that the partners taking the property shall pay the partnership debts." Sec. 359. See also, *Ex parte Freeman*, Buck. 471.

The second error has no foundation in fact. The order for distribution is " general and not special."

We also think the court did not err in disallowing the claim of Travis, against Travis, Estill & Co. The evidence upon which it was disallowed is not in the record.

We also think that the court were correct in ordering the assignee and the receiver each to pay one half the costs of the case.

J. R. SWAN, J.

It is assigned for error that the court below erred in the distribution made of the funds in the hands of the plaintiff, George Miller, assignee of William B. Travis; and also in the distribution of the funds in the hands of Small, the receiver. The determination of these assignments of error involves the question whether either Travis, or the creditors of the several firms, had any priority over each other in the payment of debts out of the funds created by the sale of the goods.

Partnership property is primarily liable to pay partnership debts; and the surplus, if any, belongs to the partners. This primary liability arises from the equity of the partners, who have a lien upon the partnership property, which they may enforce to pay the partnership debts, in preference to the creditors of the

individual partners. The creditors of the partnership, however, have no such lien ; and it is only through the right of the partners to have the joint property thus applied to pay joint debts, that the creditors of the firm can invoke the application of the rule, that the partnership property shall be primarily liable. When, therefore, the right of the partners themselves to apply the partnership property in extinguishment of the partnership debts ·is gone, the right of the partnership creditors thus to apply it, is also divested. Thus, it is competent for the partners, upon a voluntary dissolution, to agree that the joint property of the partnership shall belong to ·one of them ; and if this agreement be bona fide, and for a valuable consideration, it will transfer the whole property to such partner, and, like any other sale to third persons, will wholly free the property from the primary claim of the joint creditors. And this result will, in general, take place, although the whole or a part of the consideration of such transfer is, that the partners taking the property, shall pay the debts of the partnership. It seems to be a general rule, that when the equities of the creditors of a partnership are to be worked out through the medium of that of the partners, it must be done upon the joint effects of the partnership.

Applying these principles to the case before us, it appears that the partnership of Travis, Estill & Co. was dissolved, and the interest of Travis in the partnership property of Travis, Estill & Co. was divested by the contract under which the plaintiff in error withdrew the interest and capital stock of Travis in the firm, and Estill & Beebout agreed to pay the debts of the firm. The effect of this contract was a sale by Travis, to Estill and Beebout, of the partnership effects, and divested Travis of all further lien upon them. In such a transaction, where one partner takes the partnership property and agrees with the outgoing partner to pay the debts of the firm, there may, in some cases, be circumstances which will induce a court of equity to recognize and assert a lien upon the partnership property, in favor of the outgoing partner. Thus, if there be a voluntary dissolution of partnership with an agreement that one of the partners shall take the partnership property and pay

the partnership debts *therewith,* a court of equity would, per-haps, enforce a proper application of the assets of the firm, in behalf of the retiring partner.  But in the case before us, Travis first dissolved the partnership of Travis, Estill & Co., by an as-signment to a trustee, and then, through the trustee, divided the property of the firm, and was content with the personal promise of Estill & Beebout that they would pay the partnership debts. The object of the division seems to have been to place the par-ties, in respect to the partnership property, as they were before the partnership was entered into.   We do not think Travis intended to retain a lien upon the partnership property which remained in the hands of Estill & Beebout, or that his equities are superior to other creditors of Estill & Beebout.

Estill & Beebout, with the goods thus held by them, com-menced doing business under the name and firm of Estill & Bee-bout ; and, afterwards, under that name and firm, assigned the goods and assets of the firm, and their individual property, to Samuel W. Beebout, in trust, to pay the creditors of the firm. It seems there were no creditors of that firm.

If the assignment, however, was intended for the benefit of the creditors of the firm of Estill & Beebout, which existed prior to the formation of the firm of Travis, Estill & Co., then it was an attempt to give the creditors of the old firm a preference over the creditors of Travis, Estill & Co., and the assignment ope-rated, under the statute, for the benefit of creditors generally.

Travis, in his assignment to Miller of his individual and firm property, undertook to give his individual creditors a preference. Whether such a preference can be given in firm property by a partner, or whether his partners could not have insisted upon his assignee applying the firm property thus assigned to the payment of the firm debts, it is not necessary in this case to inquire ; for the partners of Travis, Estill & Beebout, soon after his assignment, apportioned and divided the firm property, and delivered to Miller, the assignee of Travis, the amount of the assets which Travis would have been entitled to, had there been a dissolution of the partnership by mutual consent; and then Es-till & Beebout agreed to pay the firm debts.   This promise of

Estill & Beebout to pay the firm debts did not discharge Travis from the claim of the firm creditors upon his individual property. There was, in fact, after the assignment of Travis, and the apportionment and division of the assets of the firm between Estill & Beebout and Travis's assignee, no firm property or joint fund to pay the debts of Travis, Estill & Co.; so that the question really is, whether Travis and his partners could make such assignments of firm and individual property as to give individual creditors a preference over the creditors of a firm. It will be observed that a single fund only is created by these transactions of Travis, and that fund is derived, in part from the firm, and in part from the individual property of Travis. Under these circumstances, the assignment must operate under the statute relating to assignments, for the benefit as well of the firm creditors of Travis as his individual creditors. And in thus holding, we do not intend to determine what is the effect of an assignment by a partner of his individual property only for the benefit of his individual creditors. But we do hold that where a firm is dissolved and the property of the firm divided between partners, the members of the firm cannot, in contemplation of insolvency, make an assignment of their property, both individual and that which was derived from the firm, for the benefit of, and giving preference to, their individual creditors, to the exclusion of their firm creditors. The statute relating to assignments in contemplation of insolvency, will operate upon the assignment, and work out an equal distribution.

The agreement of Estill and Beebout with Travis, through Miller, his assignee, to pay the partnership debts of Travis, Estill & Co. cannot be interposed to disturb the distribution of the assets in the hands of the receiver and of Miller, to creditors. The creditors must be first paid ; and, when paid, the balance of the funds, if any, may be adjusted, in view of this agreement of Estill & Beebout with Travis. There not being, however, sufficient funds to pay the debts, the creditors of Travis, Estill & Co. receive a pro rata amount upon the whole of their claims ; and the amount of those claims remaining unpaid, after the application of the fund derived from the assets of Estill & Beebout,

will be a proper subject of adjustment under the above mentioned agreement of Estill & Beebout with Travis, to pay the debts of Travis, Estill & Co. ; but Travis cannot, under that agreement, place himself in the relation of a creditor of Estill & Beebout, so as to claim any portion of that fund. If Travis could thus, as creditor under that agreement, claim a portion of that fund, a distribution would in effect be obtained twice upon the same debts, and Travis's portion of the fund on account of his liability to the creditors of Travis, Estill & Co., be transferred and applied to the payment of the creditors of Travis, Estill & Co.

The decree of the court below was in accordance with these views, and must be affirmed.

The order of distribution seems to have been made generally to creditors ; and was not, as the assignment of errors assumes, confined to creditors named in the report.

Whether the court erred in disallowing the claim of Travis against Travis, Estill & Co., we cannot determine, as the record does not disclose the facts upon which the court passed.

The order directing the assignee and receiver each to pay one half the costs, was not, so far as we can perceive, an abuse of discretion in the court below. We cannot, therefore, disturb it.

*Decree of the district court affirmed.*