ALLEN & CO. v. L. D. GRISSOM and others.

*Partnership, creditors of, have no equitable lien on partnership effects.*

1. Partnership creditors have no lien in equity upon, and cannot follow, the effects of a firm in the hands of an assignee under a trust deed, to give their claims a preference over the trusts contained in the deed.

2. The change in the individuals composing the firm here does not affect the rule; but the plaintiff creditors are entitled to an account of the assigned fund.

(*Hassell* v. *Griffin*, 2 Jones' Eq., 117; *Rankin* v. *Jones*, Ib., 169; *Clement* v. *Foster*, 3 Ired. Eq., 213; *Potts* v. *Blackwell*, 4 Jones' Eq., 58; *White* v. *Griffin*, 2 Jones, 3; *Phillips* v. *Trezevant*, 67 N. C., 370; *Burns* v. *Harris*, Ib., 140, approved; and *Ross* v. *Henderson*, 77 N. C., 170, doubted).

CIVIL ACTION tried at Spring Term, 1884, of DURHAM Superior Court, before *McKoy, J.*

The defendants appealed.

*Messrs. Graham & Ruffin*, for plaintiffs.
No counsel for defendants.

SMITH, C. J.    The firm of Grissom & Henry, consisting of the defendants L. D. Grissom and Robert Henry, and the latter being under age, while engaged in carrying on a mercantile business in the town of Durham, contracted in the purchase of goods for their store the two debts specified in the complaint, whereof that of the plaintiffs W. & T. Allen & Co. fell due on January 15th, 1882, and that of the other plaintiffs, Wolfsheimer & Co., on February 1st of the same year.

On November 18, 1881, the defendant Henry retired from his firm, and by an instrument under seal executed by himself and the defendant Robert Holloway, for the recited consideration of seven hundred and ninety dollars, assigned his undivided interest, being a moiety, in the property and effects of

every kind belonging to the partnership to the latter, who also covenanted to pay off the partnership debts outstanding and exonerate the said Henry from liability therefor.

Thereupon the partnership of Grissom & Holloway was formed, the latter taking the place of the withdrawing partner, and a similar business was conducted by them. Finding themselves unable to meet their liabilities, the said firm of Grissom & Holloway made a general assignment of the partnership property and resources to the defendant, John M. Moring, in trust to provide for the payment out of the fund of his own charge for services, professional and as trustee, and then to pay a debt declared to be due the defendant Pattie, wife of said Holloway, in about the sum of nineteen hundred dollars, which she in her answer states was for money loaned the firm from her own separate estate in which her husband had no interest.

The trustee, Moring, has collected from the assets seven hundred and thirteen dollars, of which he has paid the said Pattie four hundred and fifty dollars, and holds the residue subject to such disposition as the court may direct. The residue of the assigned estate, as the trustee represents, will be insufficient to discharge the secured debts. The members of both firms, as well as the firms, are insolvent.

In this action the plaintiffs suing for themselves and all other creditors of Grissom & Henry, assert and seek to enforce a lien, which they allege a court of equity will recognize as subsisting in favor of the firm creditors upon the effects and property of the firm, and to follow the fund into the hands of the assignee for the purpose of giving it a preference over the trusts contained in the deed, and they insist that the assignment by Henry of his moiety is subordinate to their claim to be satisfied out of the partnership effects. They also assail the debt alleged to be due the *feme* defendant as false and fraudulent.

The court was of opinion, and so ruled, that the joint property of Grissom & Henry was primarily chargeable with the joint debts, and that this liability adhered to it, notwithstanding

the conveyance of the partner Henry, followed by the assignment of the successor firm of Grissom & Holloway to the trustee, and that the partnership property must be first applied to the partnership debts, and ordered a reference for an account to be stated upon the basis of this ruling.

The appeal presents the question of the correctness of the ruling in reference to the equity of the partnership creditors to be paid in preference to those mentioned in the trusts of the assignment of Grissom & Holloway, and this is the only point we propose to consider.

It is well settled that each member of a partnership has a right to require the application of the joint effects to the joint debts, before any portion of them can be diverted to the individual debts of the separate partners, and this is a means of personal exoneration. It is an equity possessed by each and grows out of their relations as partners, and the implied limitation upon the power of each to dispose of the common property in furtherance of the object of their association. But this equity does not extend to the creditors, as such, so as to create a lien, but they receive the benefits of the exercise of the right of the separate partners to require the appropriation, and the exoneration is worked out in the payment of their debts. With the assent of the partners any one of them is free to dispose of the company's effects for his individual use, and a creditor cannot intervene to prevent the application. This is the doctrine established by repeated recognitions in this court, from which, whatever may have been the decisions elsewhere, we are not at liberty to depart, and it commends itself to our approval. It is true that where a fund comes under the control of a court of equity, without any previous liens or priorities resulting from positive contract, the distribution has been made among creditors by appropriating the joint effects to the joint debts, and, as some writers lay down the rule, the same preference should be accorded to the separate creditors of satisfaction out of the separate property, the surplus in each case

only being exposed to the other class of debts. 4 Kent. Com. 65; 1 Story Eq., §676.

But this rule is questioned by this court in *Hassell* v. *Griffin*, 2 Jones' Eq., 117, and *Rankin* v. *Jones*, *Ib*, 169, under the effect of our statute which makes contracts joint and several, and gives an action against the representative of a deceased joint debtor equally as against the survivor, and it is only applicable when joint and separate estates are to be administered, untrammelled with conflicting equities arising out of contract.

A few references only are needed to vindicate the principle enunciated in this court.

In *Clement* v. *Foster*, 3 Ired. Eq., 213, Chief-Justice RUFFIN, the eminent equity jurist, whose long judicial life is so intimately identified with the unfolding and application of its principles as shown in the reports, speaks in this manner:

"The principal question in the cause is whether the plaintiff had a right, in this court, to have the management of the partnership effects taken out of the hands of the partners themselves, Foster and Gilbert, or their assignees, and the effects applied to the payment of the plaintiff's debt upon the ground that the partners are not able to pay their debts, and that they are, or one of them is, *appropriating those effects to their or his separate uses*. We own that we know of no such equity in a general creditor of a partnership. At the instance of one partner the court will, in such a case, interfere against the other partner, because they are joint owners of the property, and one has no right to apply it to his separate use, thereby leaving the other liable to the partnership debts out of his own estate, or at all events, depriving him of property that belongs to him."

"The creditors of a firm," in the words of PEARSON, J., in *Rankin* v. *Jones, supra*, "*have no lien upon the effects of a firm.* If one of the partners, as in our case, transfers all his interest in the firm effects to the other, and is content with his personal undertaking to pay the firm debts, the retiring partner has no longer any lien in equity in regard to the effects of the late

firm, and the effects, supposing the transfer to be *bona fide*, become the property of the other, subject to be sold by such of his creditors, without discrimination, as issue executions, and *subject to be sold and transferred by him in trust for the payment of his debts, according to the preference he may prescribe,* in the same way as any other property he owns."

In *Potts* v. *Blackwell,* 4 Jones' Eq., 58, the same principle is reiterated by BATTLE, J., who, in his comments in answer to the question whether the creditors have such a lien upon the partnership effects at the dissolution, as to prevent one partner from assigning them in payment of his individual debts, says :

"The case of *Rankin* v. *Jones,* 2 Jones' Eq., 169, decides expressly that the creditors of a partnership have no such lien," and that in that case it was held " that the *partnership creditors could not follow these effects,* to subject them to the payment of the firm debts.

In *White* v. *Griffin,* 2 Jones, 3, it was decided that an administrator could retain the proceeds of the separate estate of an intestate for a partnership debt, against the claim of an individual creditor, in a course of legal administration, and that a court of equity will not restrain the exercise of the right. *Hassell* v. *Griffin, supra.*

Again, READE, J., delivering the opinion in *Phillips* v. *Trezevant,* 67 N. C., 370, says :   "Where one partner, who is insolvent or in failing circumstances, without the consent and against the will of the other partner, is disposing of the effects of the partnership, and appropriating them to his own use, the *other partner* has the right to an injunction and to have a receiver appointed."

So it has been decided that each member of an insolvent firm may have his personal property exemption taken out of the joint effects with the consent of the other, but not without, the court declaring " that the creditors of the firm cannot object, because *they no more have a lien upon the partnership effects,*" &c.   *Burns* v. *Harris,* Ib., 140.

The only intimation to the contrary is expressed by RODMAN, J., in *Ross* v. *Henderson*, 77 N. C., 170, where he declares that a partner undertaking to sell his interest in the whole or part of the joint property, commits a breach of the partnership agreement, "for which the other partner, and as subrogated to his rights the partnership creditors, may have a remedy." We do not suppose he means to assert an equity to reside in the creditors independently of that which the creditors possess, *inter sese,* but that their interest *results from the exercise* of the right of restraint against misapplication, which rests with the other members. If more is meant, it is wholly at variance with the current of previous adjudications, and we are not at liberty to concur in the proposition.

"It is thus through the operation of administering the equities *between the parties* themselves," is the conclusion of Mr. Justice STORY, "that the creditors have the opportunity of enforcing their *quasi lien.*" Story Part., §360.

In this view of the law governing the relations between partnership creditors and debtors in respect to the property of the latter, what claim upon the facts of this case have the plaintiffs to intercept the fund and frustrate the purposes of the assignment of the partners Grissom & Holloway to the trustee?

The former partner, Henry, is asking no relief; the continuing partner, Grissom, makes no objection to the assignment and accepts the assignee, Holloway, as a partner under it in place of Henry. These latter, Grissom & Holloway, convey to Moring. These are all willing to abide by what has been done, and the action places them in the attitude of resisting defendants, to be coerced by the power of the court.

Thus the relief is demanded upon the single ground that the firm creditors have a lien upon the firm property, which the members individually or collectively cannot evade by applying it to any other than partnership purposes, and in discharge of partnership liabilities. The cases cited show no support for the proposition.

We but repeat what has been so often said before, that the

plaintiffs have no such lien to be enforced by themselves, against the will of the partners, in whom the equity resides.

But the plaintiffs have a right to an account of the assigned fund, and if fraudulent, to have the claim of the *feme* defendant disallowed.

We therefore declare there is error in the judgment which attempts to establish a lien in favor of the plaintiffs, and so much of it is reversed. Let this be certified.

Reversed.