McDonald & Co. v. Cash & Hainds.

---

R. L. McDONALD & Co., Appellants, v. CASH & HAINDS, Defendant; ROBERT J. WHEELER, Interpleader, Respondent.

Kansas City Court of Appeals, April 9, 1894.

1. **Appellate Practice**: FINDING: ELIMINATION FROM THE CASE. When the question of the actual intent to defraud creditors participated in by an interpleader, is submitted to the jury and the ver-

McDonald & Co. v. Cash & Hainds.

dict is for the interpleader, the question of fraud is in this court taken as eliminated from the case.

2. **Partnership**: CREDITORS WITHOUT LIEN: PARTNER'S LIEN. Partnership creditors have no lien on partnership effects. The partner's lien on the partnership property has its origin in the right of the partner which lien is enforced for the partner's protection on the ground that he has the right to have the joint effects applied to the joint debts that he may be protected from such debts beyond his just proportion and be profited in the surplus, and the partnership creditor derives his right from the partner.

3. ———: ———: ———: WAIVER. Partners may waive their liens and sell their property absolutely free from such lien.

4. ———: ———: CREDITOR'S RIGHT TO SUE: LIEN. A partnership creditor has a right as would any other creditor to. bring his action and make his money but without laying hold of specific property for the purpose of enforcing a lien.

5. ———: CREDITOR'S PRIORITY OVER INDIVIDUAL. A partnership creditor has a priority of right over the individual creditor in certain extraordinary contingencies arising in the administration of partnership effects such as dissolution for winding up, administration, consequent upon death or under bankruptcy or insolvent laws, when the joint creditors of all are given priority over the individual creditors.

6. ———: SALE TO PARTNER: CONSIDERATION. One of two partners may sell to the other just as they, jointly, could to any stranger and the property loses its partnership character and becomes the individual property of the purchasing partner and is divested of the selling partner's lien. An agreement of a purchasing partner to pay the partnership debts is sufficient consideration for such sale.

7. ———: ———: FRAUD. Such sale in order to be valid, however, must be free from any fraudulent purpose in divesting the property of its partnership character. If there is fraud, partnership creditors may assert their right against the property *in specie*.

8. ———: SALE TO PARTNER: INSOLVENCY NOT FRAUD. Where a partnership is in active operation for the purposes of its organization, the mere fact that its assets are not sufficient to meet its liabilities will not render the transfer of its property to one of its members upon adequate consideration fraudulent. *Reyburn v. Mitchell*, 106 Mo. 375, considered in this connection.

9. ———: DEFINITIONS: INSOLVENCY. Technical insolvency spoken of in this case is not the insolvency of bankruptcy open or adjudged.

10. ———: INSOLVENCY: INDIVIDUAL DEBT. Cases where an insolvent partnership without consideration transfers the partnership property in payment of, or security for, the debt of one of the partners have no application to this case where the remaining partner after purchasing the stock and assuming the partnership debts sold the stock to the interpleader in satisfaction of the partnership debt to the interpleader and the partner's individual debt to the interpleader, since by his purchase of his partner the property had lost its partnership character and become his individual property. Authorities, discussed and *Phelps v. McNeely*, 66 Mo. 554, specially reviewed.

11. ———: SALE TO PARTNER: CONSIDERATION. The doctrine that the promise or undertaking of a party whose assets are not equivalent to his indebtedness is not a consideration to support a sale of property, is disapproved as wholly inexpedient when applied to the practical affairs of any day's transactions.

12. ———: ———: INSOLVENCY: FRAUD. The opinion in this case has been withheld waiting the decision of the supreme court in *In re Edwards v. McCune* lately handed down by Judge BURGESS. 25 S. W. Rep. 904.

*Appeal from the Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*Reed, James & Randolph* and *Crawley & Son* for appellants.

(1) "Partnership creditors have a primary and exclusive claim upon the partnership assets of  *   *   * insolvent partners." *Tenney v. Johnson*, 43 N. H. 144; *Phelps v. McNeeley*, 66 Mo. 554; *Flannegan v. Alexander*, 50 Mo. 50; *Ackley v. Staehlin*, 56 Mo. 561; *McDonald & Co. v. Cash & Hainds*, 45 Mo. App. 66; *In re Estate of Edwards & Wigginton*, 47 Mo. App. 307; *Reyburn v. Mitchell*, 106 Mo. 365, 375, top 377; *Murrill v. Neill*, 8 How. (U. S.) 414, at close of opinion; *Bowen v. Billings*, 13 Neb. 439, *loc. cit.* 443; *Roop v. Herron*, 15 Neb. 73, *loc. cit.* 80, 81; *Hundley v. Farris*, 103 Mo. 78. (2) Even had Cash consented to Hainds' paying the individual debt to Moore out of firm assets, in prefer-

ence to paying firm creditors other than interpleader—but there is no evidence of such consent—as the firm and both Cash and Hainds were insolvent, such consent would have been fraudulent and void. *Menagh v. Whitwell*, 52 N. Y. 146; *Bulger v. Rosa*, 119 N. Y. 459, *loc. cit.* 465; *Patterson v. Seaton*, 28 N. W. Rep. (Iowa) 598; *In re Estate of Edwards & Wigginton, supra*; *Reyburn v. Mitchell, supra.* (2) Insolvency is such a condition of the debtor's means that payment can not be enforced by law. *Eddy v. Baldwin*, 32 Mo. 360; *State ex rel. v. Koontz*, 83 Mo. 323; *McDonald v. Cash & Hainds, supra*; *Grocer Co. v. Miller*, 53 Mo. App. 107; 2 Mo. Legal News, 459.

*Lander & Johnson* for respondent.

(1) The payment of the debt of a partner by the firm assets is valid, and no fraud upon subsequent firm creditors, where the debt was one of which the firm had the benefit, and which in equity and justice the firm ought to pay. *Rose v. Shoe Co.*, 3 Central Rep. 148; 27 N. W. Rep. (Mich.) 554; *Strange v. Swafford*, N. W. Rep. 1023; *Farwell v. Metcalf*, 63 N. H. 276; *Givin v. Selley*, 5 Ohio St. 96; *Siegel v. Chedsey*, 28 Pa. St. 279; *Haben v. Hershaw*, 49 Wis. 379; *Coffin's Appeal*, 106 Pa. St. 280; *Head v. Horn*, 18 Cal. 211; *Walker v. Bank*, 98 Pa. St. 574; *Marks v. Hill*, 15 Gratt. (Va.) 400; *Saunders v. Reiley*, 105 N. Y. 12. (2) As to the $1,200 debt of interpleader for money loaned the firm of Cash & Hainds, there is no question made as to its being a firm debt. Conceding the $1,000 note given by Hainds to Moore with Wheeler as security (which Wheeler paid) to be the individual debt of Hainds, yet the transfer of the firm assets to pay both the firm and an individual debt, where the two debts are separately set forth as in the bill of sale

in this case, is valid as to the firm debts, and also as to the individual debt, if the other partner consented to the transfer. *Newland v. Martin,* 46 N. W. Rep. 1120; *Walker v. White,* 60 Mich. 427; *Smith v. Smith,* 50 N. W. Rep. 64. (3) Respondent concedes that in the absence of the consent of one partner, the other can not appropriate the firm property to the payment of an individual debt, which is all the authorities cited by appellant's brief attempt to establish. It is further conceded that in the distribution of partnership assets of an insolvent firm, where no intervening rights arise, the firm property must be first applied to firm debts, which is all the authorities cited in appellant's brief attempt to establish. (4) The rule giving partnership creditors preference over individual creditors is not for the benefit of the creditors but of the partners, and ceases to apply after a sale by one partner of all his interest in the firm to the other partner. *Norris v. Rumsey,* 54 Mo. App. 143; 2 Mo. Legal News, No. 24; *Hanford v. Prouty,* 24 N. E. Rep. (Ill.) 565; *Reyburn v. Mitchell,* 106 Mo. 365; *Sexton v. Anderson,* 95 Mo. 373; *Tennant, Walker & Co. v. McKean,* 46 Mo. App. 486. (5) Where there is a good consideration to support the transaction (as in this case, the firm having had the benefit of the $1,000, paid off by interpleader) a firm creditor, having no specific lien on the firm property, has no legal grounds of complaint if the firm property is applied to pay such obligation, even though the firm was insolvent at the time. *Bernheimer v. Rindskopf,* 116 N. Y. 428. (6) Even though Wheeler knew that the transfer of the goods to him by Hainds was intended on the part of Hainds to delay other creditors, yet if Wheeler, in good faith, took the property to save a *bona fide* debt, the transaction, if with the acquiescence of the partner, Cash, is not for that reason void. *Sexton v. Anderson,* 95 Mo. 373;

*Norris v. Rumsey,* cited above; see, further, *Tennant, Walker & Co. v. McKean, supra; House v. Lawrence,* 9 Cush. (Mass.) 553; *Reyburn v. Mitchell, supra; Carson v. Rogers,* 67 Iowa, 606; *Johnson v. McGrew,* 11 Iowa, 151; *Aultman v. Hainey,* 59 Iowa, 654. The case of *Norris v. Rumsey,* cited above, seems to settle the law of this case.

ELLISON, J.—This action was begun against defendants Cash & Hainds, partners in the mercantile business. An attachment, in aid, was levied upon a stock of general merchandise as the property of defendants, but which was in the possession of, and claimed by, the interpleader. The trial resulted in a verdict and judgment for interpleader.

The facts necessary to state for an understanding of the point we deem necessary to decide, are substantially these: Cash & Hainds were insolvent both as a firm and individually; that is to say, they were insolvent in the sense that their assets, liable to process of law and disposed of under process of law, would not have liquidated their indebtedness. The firm was a going concern and was in the untrammeled and uninterrupted possession and control of the partnership property, which was unincumbered.

Among other debts owing by defendants was that to these plaintiffs and a debt to the interpleader. Defendant Hainds also owed interpleader an individual debt, interpleader discharging a debt for which he was Hainds' surety. Defendant Cash sold his portion of the firm property to his partner Hainds, and retired from the firm. The consideration for this sale was $300, and Hainds' agreement to pay the partnership debts. Hainds, a short time thereafter, sold and delivered the stock of merchandise to interpleader, the consideration being the cancellation and settlement of interpleader's

claim against the partnership and his claim against. Hainds individually. ., Shortly thereafter plaintiff brought this action and levied the writ of attachment as before stated.

The question of actual intent to defraud creditors participated in by interpleader was submitted to the jury in an instruction and since the verdict was for interpleader we may properly consider any actual fraudulent purpose as eliminated from the case. We are thus left to that which has been principally argued, whether the insolvency of the firm and its members individually, the same being known to interpleader, together with his knowledge that his vendor, Hainds, had agreed to pay the partnership debts, will invalidate interpleader's purchase of the property.

There is perhaps no branch of jurisprudence better settled than that partnership creditors have no lien on partnership effects; that the lien existing with reference to partnership property is the partners' lien which has its origin in right of the partner and which is given effective force and application for the protection of the partner, each partner being liable for the whole of the partnership debts, and each being entitled to the surplus of the partnership funds after payment of debts, each is entitled to have the joint effects applied to the payment of the joint debts, to the end that he may be protected from the debts, beyond his just proportion, and profited in the surplus, if there be any. It is thus that the partner is primarily benefited by this principle and that the creditor's interest or right, in this respect, is incidental. The partnership creditors' right in the partnership property *in specie* is derived through the primary right of the partner and his right thus comes to be said to be a *quasi* lien which is worked out through the partner's lien. It necessarily follows, and the proposition is established without

question, that the partners may waive their lien. They have full power of disposal of the property, since it is affected by no lien save their own. It is as much at their joint disposal as individual property is at the free disposal of the individual. These observations have the direct support of perhaps all the text writers on the subject, and of innumerable adjudications, including our own state. *Sexton v. Anderson*, 95 Mo. 381; *Hundley v. Farris*, 103 Mo. 78; *Reyburn v. Mitchell*, 106 Mo. 365; *Norris v. Rumsey*, 54 Mo. App. 143; *Tennant v. McKean*, 46 Mo. App. 486.

A partnership creditor has the right, as would any other suitor, to bring his action and make his money by process against his debtors in the ordinary way, and, so, too, he may bring his action against the individual purchasing partner; but such rights are quite a different matter from laying hold of specific property for the purpose of enforcing a lien.

A mistaken notion has sometimes found expression as to the priority of right in partnership creditors over individual creditors, in partnership property. And this I find has led to some confusion of statement, as well perhaps, as of application. A partnership creditor has a priority of right over the individual creditor in certain extraordinary contingencies, and these arise in the *administration* of the partnership effects, as where the partnership is dissolved merely for the purpose of winding up its affairs, or its being administered consequent upon death, or under bankrupt or insolvent laws. *Tennant v. McKean*, 46 Mo. App. 486; *Hundley v. Farris*, 103 Mo. 78, 87; *Emanuel v. Bird*, 19 Ala. 596; *McDonald v. Beach*, 2 Blackford, 58; *Mayer v. Clark*, 40 Ala. 270. Thus becoming defunct, the joint creditors of all are given priority over the individual creditor of one or more. Otherwise, partnership property in part belonging to a partner not individually indebted,

would be taken for the individual debt of a copartner, and thus his original right as a partner, as before stated, be destroyed.

Having, then, the full and unlimited power of disposal, one of two partners may sell to the other just as they, jointly, could to a stranger and the property thereby loses its partnership character and becomes the individual property of the remaining partner just as it would were he a stranger. Such a sale divests the lien of the selling partner (unless it be reserved) and leaves no partnership property to which a lien may attach. And the consideration for such sale may be in whole, or in part, the agreement of the purchasing partner to pay the partnership debts; for this agreement is but the individual undertaking of the purchaser. *Norris v. Rumsey*, 54 Mo. App. 143; *Ruffin, ex parte*, 6 Ves. 119; *Williams, ex parte*, 11 Ves. 3; *Robb v. Mudge*, 14 Gray, 534; *Andrews v. Mann*, 31 Miss. 322; *Fulton v. Hughes*, 63 Miss. 61; *Vosper v. Cramer*, 31 N. J. Eq. 420; *Dimon v. Hazard*, 32 N. Y. 65; *Allen v. Grissom*, 90 N. C. 90; *Miller v. Estill*, 5 Ohio St. 508; *White v. Parrish*, 20 Texas, 688; *Reese v. Bradford*, 13 Ala. 837; *Hapgood v. Cromwell*, 48 Ill. 64; *Goenbell v. Arnett*, 100 Ill. 34; *Trentman v. Swartzell*, 85 Ind. 447; *City v. Willey*, 35 Iowa, 330; *Griffith v. Buck*, 13 Md. 102; *Armstrong v. Fahnestock*, 19 Md. 58; Story, Part., sec. 359.

But there is this qualification to the foregoing doctrine (if it should be called a qualification, since whatever is done in fraud is considered to be noneffective) that is, that there must not be a fraudulent purpose in divesting the property of its partnership character. If there be a fraudulent intention to defraud creditors they may yet assert their right against the property *in specie*, if it is not in the hands of an innocent purchaser, without notice. In this case the

only ground of fraud is insolvency, of which inter-pleader had knowledge. The question for decision then is, does insolvency alone constitute fraud. The proposition that it is of itself a fraud is not without support of authority. *Arnold v. Hagemen*, 33 W. Va. 197. But the weight of judicial opinion is to the contrary. *Ex parte Peak*, 1 Mad. Ch. 346; *Allen v. Center Valley Co.*, 21 Conn. 130; *Armstrong v. Fahnestock*, 19 Md. 65; *Case v. Beauregard*, 99 U. S. 119; *Fitzpatrick v. Flannigan*, 106 U. S. 648; *Howe v. Lawrence*, 9 Cush. 553; *Upson v. Arnold*, 19 Ga. 190.

It is not an unfair assumption to say that this is also the view entertained by our supreme court, for in the case of *Reyburn v. Mitchell*, 106 Mo. 375, the insolvency figured as one of the circumstances appearing in the case, though fraud in fact was adjudged to have existed in the transactions set forth in the opinion, yet Judge MACFARLANE, in speaking for the court, made use of the following language, giving clear indication that there was a decided distinction between insolvency and a want of good faith. The judge says: "It is, as a general proposition, true, that after the dissolution of a partnership, even though it may be insolvent, by the sale and transfer of all its property, the creditors can not follow the property into the hands of the purchaser, but that proposition is subject to the very material, and often controlling, qualification that the transaction must have been in good faith and not for fraudulent purposes."

To us it seems clear that, at least where the partnership is in active operation for the purposes of its organization, the mere fact that its assets are not sufficient to meet its liabilities will not render a transfer of its property to one of its members, upon an adequate consideration, fraudulent. The authorities show that the sale may be made to one of the members in all respects the same

VOL. 57—35

as it may be made to a stranger, and that a partnership has as full right of disposal of its property that an individual has of individual property. So that if mere technical insolvency will destroy the *jus disponendi* in the one case, it will in the other, and we can readily see that to give such rule effective and practical force we would destroy much of the barter and sale daily taking place between the people. The technical rule of insolvency would find application to a large portion of the public, and if every man whose available assets are not equal to his indebtedness is thereby restrained from the ordinary traffic of daily exchange or sale, the consequences, to say the least, would be quite serious.

The technical insolvency we are here speaking of is not bankruptcy, or open or adjudged insolvency. Those instances are altogether different from the sort of insolvency we are discussing in this case. It is well enough to remark in this connection that in some of the authorities pertaining to the matter of bankruptcy under bankrupt laws, insolvency is spoken of as synonymous with bankruptcy; and to further remark, that in some cases holding that mere insolvency invalidates a transfer by the partners, authorities construing and enforcing the bankrupt statute are cited in support thereof. Their application is too remote to be of any value.

There is another state of facts frequently appearing in partnership transactions which has no proper application to a case of the kind now under discussion; that is, where an insolvent partnership, *without consideration*, transfers the partnership property in payment of, or as security for, the debt of one of the partners. Such instances might, perhaps, be deemed fraudulent, as being voluntary under the statute of fraudulent conveyances. They might be no more than a gift and might, doubtless, be held to be fraud upon creditors.

We have deemed it necessary to refer to such class of cases from the fact that in this case, a part of the consideration for the transfer from Hainds to interpleader was the individual debt of Hainds to interpleader. But it must be borne in mind that at this time the property had *lost its partnership character by having already become the individual property* of Hainds. If the property had became the individual property of Hainds he had the right to dispose of it as would an owner under any other circumstances and when he paid his individual debt with it he was only dealing with his own. *Trentman v. Swartzell*, 85 Ind. 447; *Fulton v. Hughes*, 63 Miss. 61. Some expressions in *Arnold v. Hagerman*, 43 N. J. Eq. 196, are not in harmony with what we have said, but there the court said that the transfer to the individual partner was made with *the view of forcing an extension of time and a compromise with creditors*. The transfer was also, by a course of reasoning therein set forth, held to be without consideration. In *Roon v. Herron*, 15 Neb. 76, there was a mere dissolution of the partnership and nothing to show an intention to make the property the separate property of the individual. In such instance the partner does not lose his lien and the property retains its trust character for the payment of partnership creditors. This has always been recognized as the result of such a dissolution of the partnership. It is so stated in *Ex parte Ruffin* and *Ex parte Williams, supra*. We have been referred to the case of *Phelps v. McNeely*, 66 Mo. 554, as being contrary to what we have said, and under the reasoning employed therein it is. But that case as it existed on the facts could have been placed on ground not out of harmony with the view we have taken of the case before us, for the reason that there were facts there not appearing here. In that case it might have been said, from the facts, that the selling partner did not mean to waive

his lien and there was probably enough to show that he did in fact retain his partner's lien on the partnership effects, or, to express it differently, that he charged the effects with the payment of the partnership debts. This may be done and has been recognized as legitimate since *Ex parte Ruffin*, 6 Ves. 119. It was recognized in *Ex parte Williams*, 11 Ves. 5; in *Hapgood v. Cromwell*, 48 Ill. 64, and other cases. In *Ex parte Ruffin*, Lord ELDON suggested that a transfer of the property could be made "subject to the payment of the debts," which would be different from a mere transfer in consideration of the personal assumption by the buyer to pay them. So in *Ex parte Williams*, 11 Ves. 5, he says the transfer should be "so conceived as not to leave any lien upon the property." So, if an intention clearly appears to retain the partner's equity it will be retained for his benefit and thus the property saved for the creditor. 1 Bates on Part., sec. 552. On these grounds only, the case of *Phelps v. McNeely* could be sustained.

If it was understood between the purchasing and selling partner in *Phelps v. McNeely* that the purchasing partner should not only pay the partnership debt to McNeely but that he should give a mortgage on the partnership property to secure it, the selling partner refusing to sell unless that was done, it might be inferred that he retained his partner's lien. We must, however, admit that some of the reasoning in that case is unsatisfactory. It is not at all in harmony with the foregoing cases of *Sexton v. Anderson*, 95 Mo. 381; *Hundly v. Farris*, 103 Mo. 78; *Reyburn v. Mitchell*, 106 Mo. 365. It it is to be remarked that the authority principally relied upon in that case is a New Hampshire case, *Tenney v. Johnson*, 43 N. H. 144, where it appears that in that state the lien is recognized as existing in the creditor and not as derivative through the partner,—a proposition wholly unsupported by author-

ity elsewhere, so far as our research has extended.

There are some cases, such as *Darby v. Gilligen*, 33 West Va. 249, which hold that if the partners are insolvent, the promise of the purchasing partner to pay for the partnership property, or to pay the partnership debts is not a consideration to support the transfer. Such view would perhaps destroy the case which the interpleader has presented, but we can not regard the position as sound. Such state of facts may well be a circumstance to show fraud when connected with other matter. But to say that the promise or undertaking of a party whose assets are not equal to his indebtedness is not a consideration to support a sale of property is, in effect, saying that all sales to such a party on credit may be avoided for lack of a consideration. When the rule is applied to the practical affairs of every day's transactions it will be found to be wholly inexpedient.

After a careful examination of the question we are led to the conclusion that mere technical insolvency, without more, of a partnership in active business will not make a sale (otherwise *bona fide*) to a purchasing partner, fraudulent. The judgment ought therefore to be affirmed.

After the above opinion was written it was learned that a case involving the question whether insolvency would avoid a sale otherwise *bona fide*, was pending before the supreme court *in banc*, and we have withheld approval or promulgation of the foregoing until we could learn the result of that case. A copy of the opinion rendered therein has now been furnished us in which that court, through Judge BURGESS, announced that it would not; and in which *Phelps v. McNeely*, *supra*, is expressly overruled as being out of line with the current of authority, here and elsewhere. *In re Edwards v. McCune*, 25 S. W. Rep. 904. Affirmed. All concur.