J. G. HUTCHINSON & COMPANY, Appellant, v. MORRIS BROS., Defendants, JOHN F. M. BRASSFIELD, Interpleader, Respondent.

Kansas City Court of Appeals, December 3, 1900.

1. **Fraudulent Conveyance**: SALE OF ONE PARTNER: EVIDENCE: INSTRUCTION.   One partner, with the consent of his co-partner, may sell the partnership effects to satisfy a liability of the co-partner for bail money which the latter has forfeited by failure to appear, even though such liability may be evidenced by a mortgage concededly fraudulent; but the consent of the co-partner must be shown by proper evidence before an instruction to the above effect is admissible.

2. ——: ——: ——: CREDITOR'S RIGHT.   The right of a creditor to subject partnership property to his debt is a derivative right coming through the partner; but the creditor may lay hold of the partnership effects by attachment and have them administered for his benefit.   Such right can only be divested by the sale of the partnership effects free from fraud, and the fact that the debt of the non-consenting partner was satisfied by the sale, does not effect the matter.

3. **Bail**: CASH DEPOSIT: FORFEITURE DEBT.   If the bail put up a cash deposit for the principal which the latter accepts by going at liberty thereunder and afterwards forfeits the same, causing loss to the bail, the latter is a valid debt against the principal unless it was understood at the time of the deposit that the money should be forfeited by non-appearance.

Appeal from the Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED.

*Platt Hubbell, J. M. Frame* and *E. R Bane* for appellant.

(1) The court instructed the jury that although it was understood between Morris Bros. and the interpleader that the mortgage should be withheld from record for fear of injuring the credit of Morris Bros.; that said mortgage was so withheld from record; that J. G. Hutchinson & Co. sold goods to Morris Bros. in the belief that their property was unencumbered; that J. G. Hutchison & Co. would not have extended credit to Morris Bros. if they had known of the mortgage; that the interpleader failed to record or take possession of said property under said mortgage until after J. G. Hutchison & Co. had sold the goods sued for to Morris Bros., yet, the interpleader was entitled to recover if he took possession of the property under said mortgage before the attachment was levied. This heresy was recently gibbeted by this court. Dry Goods Co. v. Brown, 73 Mo. App. 245; Williams v. Kirk, 68 Mo. App. 457; Lowrence v. Barker, 82 Mo. App. 125. (2) The court erred in giving interpleader's instruction numbered 8, because that instruction assumes that there was a sale of the stock of goods to interpleader, by Morris Bros. There was little, if any, evidence of a sale and the question whether there had been a sale was a stoutly contested question of fact. Robertson v. Drane, 100 Mo. 273; Hull v. St. Louis, 138 Mo. 618. (3) The court erred in giving interpleader's instruction numbered 12—it is a comment on the evidence. William v. Stephens, 38 Mo. App. 165; Fine v. Schools, 30

Mo. 176; Blair v. Railway, 31 Mo. App. 231; Railroad v. Stockyards, 120 Mo. 565.    (4)   The question whether the $500 was a loan to Marion Morris, or whether it was simply deposited as bail by the interpleader, was a vital question. U. S. v. Simmons, 14 L. R. A. 78; Johnson v. Ragsdale, 73 Mo. App. 594; Baker v. Farris, 61 Mo. 389; Sumner v. Summers, 54 Mo. 340; Bick v. Seal, 45 Mo. App. 475; Ball v. O'Neill, 64 Mo. App. 388; Claflin v. Torlina, 56 Mo. 369; Smith Per. Prop., sec. 5, 105, p. 178; Martindale Conveyancing, p. 386.    (5)  The only thing tending to show that Marion Morris consented, at any time, to Chas. Morris making any disposition of the partnership stock of groceries, was testimony of third parties concerning what Chas. Morris had told them that Marion Morris had told him—while any witness might have legally testified to any declaration of Marion Morris made to the witness, these third party rumors are the vilest hearsay.   Goltz v. Griswold, 113 Mo. 144; Harding v. Wright, 119 Mo. 9; Houser v. Andersch, 61 Mo. App. 20; Implement Co. v. Corbin, 83 Mo. App. 438; Hilliker v. Francisco, 65 Mo. 598; Bank v. Schoen, 56 Mo. App. 160; Mansur v. Ritchie, 143 Mo. 587; Calumet v. Haskell, 144 Mo. 331.

*Kerr, Parker & Kerr* for respondent.

(1) It is competent for one of the partners to testify that he never consented to the sale of the goods.   Crow v. Andrews, 24 Mo. App. 163, 164.   After a vendor has parted with his title, he has no more right to impress the title, by his acts and declarations than a mere stranger.   Elsass v. Harrington, 28 Mo. App. 306.   (2) It is incompetent for Morris to say that the sale was a fraud or a sham.   Weinrich v. Porter, 47 Mo. 294, 295; Blount v. Hamey, 43 Mo. App.

650; Diel v. Stegner, 56 Mo. App. 539. (3) As to whether the sale by one of the firm is valid or legal, is a fact that does not concern the attaching creditors. This objection can only be made by the members of the firm. Plow Co. v. Lang, 55 Mo. App. 349; Walker & Co. v. McKean, 46 Mo. App. 492; Sexton v. Anderson, 95 Mo. 380, 381. (4) The partnership or firm may use the partnership property for the payment of the individual debt of one member of the firm. Peck & Co. v. McCune, 122 Mo. 431. (5) A conveyance of personal property to one of the creditors is perfectly lawful, even though it has the effect to hinder and delay other creditors in the collection of their debts, and even though the transferee knew at the time that it would have this effect. State to use v. Mason, 112 Mo. 380, 381. (6) One person has a perfect right to loan another money to make a cash bond in the state of Kansas, and a debt so created is perfectly legal and valid. R. S. of Kansas 1897, art. 9, sec. 144, 145; Morrow v. State, 6 Kan. Rep. 222 (side.) (7) In a case of this kind, when fraud is claimed by attaching creditors, the burden of proof is on the one claiming the fraud, and not on the interpleader. Imp. Co. v. Ritchie, 143 Mo. 587.

ELLISON, J.—Plaintiffs are wholesale merchants and sold to defendants, a firm of retail merchants, a bill of groceries. Afterwards, the plaintiffs brought an action on the account and sued out an attachment in aid. Interpleader filed his interplea, making claim of title to the property. A trial of the interplea resulted in his favor.

It appears that the defendants were a partnership composed of Charles and Marion Morris. That the latter was arrested and confined in jail in Kansas on a criminal charge and that interpleader deposited with the proper authority in Kansas $500 as bail for his appearance to answer the

charge. That Marion defaulted and the money was forfeited. Before depositing the money, it seems that it was supposed interpleader could furnish a bond in regular form for his appearance, but on it being learned that he could not, he deposited the money. But before the money was deposited, Charles executed a note for $500, secured by chattel mortgage on the firm stock in the nature of indemnity to interpleader by reason of his signing the bond (the mortgage reading as though he had already signed it). When the money was deposited Marion was released. The mortgage was not recorded for several months and was finally filed for record the day preceding the attachment. There was evidence tending to show this was by design to save the firm's credit and other evidence tending to show that it was accidental and by mistake. Plaintiffs sold the goods between the time of making and the filing of the mortgage and would not have sold them had they known there was a mortgage. On the day before the attachment was levied and after the money was forfeited by the non-appearance of Marion, Charles Morris sold and delivered the stock to interpleader in payment of his loss of the bail money and he was in possession at the time of the levy.

Plaintiffs claim that interpleader should not have prevailed in the trial court for the reason that the mortgage was withheld from record in fraud of creditors and to protect the credit of the partnership and relies on the cases of Williams v. Kirk, 68 Mo. App. 457; Dry Goods Co. v. Brown, 73 Mo. App. 245. On the other hand, interpleader disavows the mortgage and claims that recognizing it was invalid, he bought the stock outright for a good faith debt (the bail money) prior to the attachment. There was ample evidence to sustain the verdict in this respect and we therefore would not disturb it but for error committed in instructions and on the rulings on evidence.

The court instructed the jury for interpleader that notwithstanding the invalidity of the mortgage as a base for his claim, yet if Charles Morris with the consent of Marion sold and delivered to him the stock for the consideration of the bail money furnished by him, it was a valid sale. We think this would have been a proper instruction, if justified by the evidence. For even conceding the mortgage to have been fraudulent yet, before the rights of third parties intervene, the fraud may be repented of and a sale made for a *bona fide* prior debt. Peters Shoe Co. v. Arnold, 82 Mo. App. 1. The case of Lowrence v. Barker, 82 Mo. App. 125 is not in point. In that case the parties made their claim under the fraudulent mortgage, while in this case the parties explicitly disavowed the mortgage and made an absolute sale.

But Charles Morris had no authority to sell the partnership property without the consent of Marion. One partner alone can not sell the partnership property in payment of the other partner's debt, yet he may do so with the consent of all the partners. Goddard-Peck Grocery Co. v. McCune, 122 Mo. 426; McDonald & Co. v. Cash & Hainds, 57 Mo. App. 536. Now the only evidence that Marion consented to Charles selling the partnership property consisted of what witnesses for interpleader (including himself) stated that Charles told them that Marion had told him. None of these witnesses pretended that Marion *himself* had said he authorized the sale. This was mere hearsay and the evidence should have been excluded and instructions on that head for interpleader should have been refused.

But it is said that though Marion did not consent, yet since he is not objecting, attaching creditors have no right in the matter. It is true that the right of a creditor to subject partnership property to the payment of debts is a derivative

right coming through the partners, and that this derivative right can only be asserted by laying hold of the property generally, upon death and dissolution of partnership, assignment, bankruptcy or insolvency. Tenant Walker & Co. v. McKean, 46 Mo. App. 486; McDonald & Co. v. Cash & Hainds, 57 Mo. App. 536. But we are of the opinion that the partnership creditor, in a proper case, may lay hold of the partnership effects by attachment and by that proceeding have them administered for his benefit. Under the authorities cited any sale by one or more of the partners which divests the partnership interest must be free from fraud. If it be fraudulent, it fails to divest the interest of the creditor. So therefore if the latter lays hold of the partnership property by attachment, he places it in *custodia legis* for administration for his benefit.

That the debt in this case was that of the non-consenting partner does not affect the matter.

In view of the fact that the case is to be retried we will suggest that if it be shown that interpleader made a cash deposit bail for Marion, as seems to be allowed by the law of Kansas, which was accepted by him by going at liberty thereunder and which he afterwards forfeited causing the loss of the amount to interpleader, the latter has a valid debt against him and plaintiffs' instruction number six should not have been given. Such case is not like that of a contract of indemnity executed to one to secure him against loss if he will execute bail for the appearance of one accused of crime. Unless it could be shown that it was understood at the time the deposit was made that the accused would avoid trial by non-appearance and forfeiture.

The judgment is reversed and the cause remanded. All concur.