## Case No. 8,044.

### In re LANE et al.

### In re BOYNTON.

[2 Lowell, 333; [1] 10 N. B. R. 135.]

District Court, D. Massachusetts. July, 1874.

BANKRUPTCY—PARTNERSHIP—MONEY DRAWN OUT BY ONE PARTNER — CREDITORS ENTITLED TO SHARE—EXCHANGE OF NOTES WITH BANKRUPT'S FIRM.

1. No proof can be made in bankruptcy between the joint and separate estates, in respect either of money drawn out, without fraud, by one partner, or of goods sold to him by the firm, though he was to sell them again.

[Cited in Re McEwen, Case No. 8,783. Criticised in Re McLean, Id. 8,879. Cited in Re Hamilton, 1 Fed. 811; Re Lloyd, 22 Fed. 91; Re Boston & Fairhaven Iron-Works, 29 Fed. 784.]

2. Where money was advanced by A. to B., for capital in trade. with the understanding that B. should not be pressed for payment. but with no binding contract delaying or deferring payment, and no misrepresentation was made to B.'s creditors, A. was held entitled to share in the dividends of B.'s estate, under a composition deed in the usual form.

3. Where A., holding several notes of B., exchanged some of them for notes of like amount of a firm in which B. was a partner,—semble, this arrangement, if made in contemplation of bankruptcy, would be a fraud on the joint creditors; but, held, it could not be set aside when the bankruptcy of the firm occurred more than four months afterwards.

---

[In the matter of G. H. Lane, Brett & Co., and C. H. Boynton, bankrupts.]

LOWELL, District Judge. 1. The first question is, whether the joint creditors of the firm can have recourse to the separate estate of Lane for money drawn out by him while the firm was solvent, with the assent of his copartners. The general rule in bankruptcy is, that there can be no proof between the joint and separate estates of partners, unless there is a surplus of the joint estate to be divided. This rule was adopted partly as being, upon the whole, the most equitable, on the supposition that the joint creditors had given credit to the joint estate, and the separate creditors to the separate estates, respectively; and partly, I apprehend, upon the consideration that there is no such thing as a debt between the partners, or between a partner and his firm, in respect to partnership matters, excepting upon a winding up of all the affairs; and it was found to be very expensive and inconvenient to go into a general accounting in bankruptcy, and it was thought more expedient, as well as more just, to take the estates as the parties left them. Story, Partn. § 390; Lindl. Partn. p. 994; Harmon v. Clark, 13 Gray, 114; Houseal's Appeal, 45 Pa. St. 484.

2. The next question is, whether the firm creditors can have recourse to the separate estate for goods sold to one Boutwell, who was only a clerk representing Lane, and well known to be so. To the general rule above stated there are held in England to be two exceptions, one of which, that of a fraudulent withdrawal of funds, is foreign to this case; the second is, when there have been wholly distinct trades carried on by the partners, or by some of them, and the firms have dealt together. In one of the early cases, the same two persons carried on distinct trades at two different places, and the accounts were kept entirely distinct. One firm was conducted under the name of a clerk, who was not, as between the parties, a partner. The two firms had dealt with each other precisely as they would have done with strangers, and one firm was indebted to the other. A joint commission having been issued against the two partners, and the clerk, the lord chancellor, on petition, ordered that the commissioners should ascertain and declare the balance due from the one estate to the other, and that such declaration should be considered a good and effectual proof of the debt or balance, and that the assignees should transfer from the one estate to the other a ratable dividend in proportion with the other creditors: Ex parte Johns, 1 Cooke, Bankr. Law, 538. The two estates were settled as if they had been wholly distinct, probably upon the ground, or substantially that, of apparent ownership; and it would seem that, so far as third persons were concerned, one firm had a part-

ner who was not in the other, which would bring it within the category of two firms having one or more partners in common, but not all, in which the right to prove is generally admitted. See In re Buckhause, decided by me a few days since [Case No. 2,086]. The English cases go beyond this, and permit proof where there has been a dealing between the two firms in the way of trade, though one of the firms included all the partners in the other. Ex parte St. Barbe, 11 Ves. 413; Ex parte Hesham, 1 Rose, 146. But they confine it strictly to a dealing between trade and trade; and, if it amounts merely to an advance of money by a firm to one or more of its partners, or by partners to the firm, will not consider it a debt, even though the creditor-partner carries on the distinct trade of a banker. Ex parte Sillitoe, 1 Glyn & J. 374; Ex parte Williams, 3 Mont. D. & D. 433. The supreme court of Massachusetts refused to admit the exception, and rejected the proof offered by the joint against the separate estate, even when there was a distinct trade. Somerset Potters' Works v. Minot, 10 Cush. 592. It seems to me that the Massachusetts doctrine is the better one. In the case of In re Buckhause, above mentioned; 1 admitted the proof, because the firms were really different; so that a debt was actually created from one to the other which could be recovered in a court of equity, without winding up either firm; but the sale of goods by the firm in this case to one of the partners, appears to be nothing more than an advance to him, as partner, which might, and must be, brought into the general account. If so, it has not the characteristics of a debt in bankruptcy, unless we repeal the general rule, and wind up all the estates, as upon an ordinary dissolution of copartnership, which has not been asked for in this case. The nice distinctions taken in England have led to uncertainty, and the simple rule, not to go into the accounts between partners, seems to have been broken without sufficient necessity. The mere difference between a credit for money and one for goods is not, in my judgment, substantial enough to support an exception.

3. The third question submitted to me by the written agreement of the parties is, whether the separate estate of G. H. Lane can share in the dividend which is to be made under the trust deed, by which the affairs of J. H. Hobart are wound up. The deed was made for the benefit of all the creditors of Hobart, to save the expense of proceedings in bankruptcy. The objection taken by Hobart's creditors is, that the money advanced by Lane was capital, and was to be paid only out of the profits of the business. Lane was not a partner, nor held out as such; nor was any creditor informed, so far as the evidence discloses, that any such arrangement as is said to have been made, was made. There is no evidence, therefore, of any thing which

should estop Lane, or his assignees, from sharing the dividend. The only question is, whether there was a binding contract between the parties that Lane should be paid only out of the profits of the business, so that if he himself, remaining solvent, had sued Hobart, it would have been a good plea, in law and fact, that the defendant had not yet realized the money from the profits of his business. I do not find such a case to be made out. Hobart had been a salesman for Lane, and, partly from friendship and partly from the hope of having a good customer, Lane advanced him the money for his stock, with an understanding, probably, that he should not be pressed for repayment. It would have been useless to set up the business if the capital was to be taken away immediately, and no doubt Hobart expected to have the use of the money for an indefinite period; but, when all the parties failed, and the business came to an end, Lane appears to be fairly one of his creditors in respect to the capital. There are, as I have said, no equities in the case.

4. The fourth case is that of the notes held by Mrs. Luther against the firm of C. H. Boynton & Co., a firm consisting of Boynton and George H. Lane. Mrs. Luther had several notes of Lane, part of which were to be paid about the time of the great fire, which destroyed a large amount of the property of the firm of G. H. Lane, Brett, & Co. After the fire the firm was insolvent, and made an offer of compromise to the joint creditors, which they were disposed to accept. After this Mrs. Luther exchanged a part of the notes, at Lane's request, for notes of C. H. Boynton & Co., more than four months and less than six months before the bankruptcy of the latter firm. It is insisted that both Lane and C. H. Boynton & Co. were insolvent when these notes were given, and that the intent was to withdraw funds from the assignees of the firm. The insolvency of Boynton & Co. is denied [by Mrs. Luther, and I do not decide the fact for reasons which will presently appear].[2] The notes were given with the assent of Boynton, and were no fraud on him; but they would have the effect, when paid, of withdrawing a part of the amount which stood to the credit of Lane in the books of that firm, which was considerable. It was understood, I think, by the partners, as being such a withdrawal. Such an arrangement, if bankruptcy follows, would have the effect to diminish the aggregate of debts to be proved against the separate estate of Lane, and increase that against the joint estate of C. H. Boynton & Co., and thus to operate a fraud or injustice upon the joint creditors. Where a separate creditor had obtained a joint indorsement of his notes, after the partners were actually insolvent, and within six months of their legal insolvency, he was not permitted to prove against the joint estate under the Massachusetts statute. Phillips v. Ames, 5 Allen, 183. In three cases I have held that an arrangement by which property was changed from joint to several, after insolvency, and within four months of bankruptcy, was voidable. [In re Waite [Case No. 17,044]; In re Federhen [Id. 4,713a]; In re Johnson [Id. 7,369].] [2]

This case differs from any I have decided, because here was no change, conveyance, or disposition of property or assets of any kind, to bring it within the words of section 35 of the statute [of 1867 (14 Stat. 534)]. It is an arrangement of the debts by which, in case of bankruptcy, an advantage may be obtained by a separate creditor to the injury of the joint creditors. As it happens in this case that the separate bankruptcy was begun within four months, and the joint bankruptcy after four months and within six months of the transaction, a very important question arises in respect to the limitations of section 35. No doubt the effect of the exchange is to prefer a separate creditor; and, if there were a surplus of the joint estate, Lane's separate creditors would have their share, and thus it might happen that not only was the separate creditor preferred, but the separate estate diminished. But I understand the facts to be otherwise in this case, and I cannot hold that the separate creditors are to be permitted to complain, nor do they complain, of an act which has not only been of no damage, but an actual advantage, to them.

In this case, the loss is suffered by the joint creditors, whose dividend will be diminished if this debt shares with theirs; and, if this is a voidable act, as was held in the case cited from 5 Allen, 183, is it one that is cured by the lapse of four months? In my opinion, it is. The constructive fraud is more like a preference than any thing else. No doubt the second clause of sect. 35 is broad enough to include preferences; but as they are specially mentioned in the first clause, and with a different limitation, we must construe the second so as to omit them. Now, if the partners, instead of giving their note, had paid the money, it seems to me the true description of the act would be, that it was a preference, if not as to the separate creditors, then as to the joint creditors. It was taking their money to pay one debt in full. Mrs. Luther was not a creditor of the firm; but a payment to her would not be a mere gift. I think she, being a separate creditor, has enough of the character of a creditor to be preferred by the firm, and that the payment to her might be avoided as a preference; and it is rather of that character than a general fraud on the assignee. See Heilbut v. Nevill, L. R. 4 C. P. 354, L. R. 5 C. P. 478.

The directions, then, will be:—(1) Proof

---

between the joint and separate estates of G. H. Lane, Brett & Co. is rejected, in respect to both charges, i. e., of money drawn out and of goods sold. (2) The assignees of G. H. Lane are entitled to share in the assets of J. H. Hobart. (3) The Luther notes may be proved against the joint estate of C. H. Boynton & Co.