### In re JONES et al.

(District Court, E. D. Missouri, E. D. February 1, 1900.)

No. 91.

**1. BANKRUPTCY—PARTNERSHIP ASSETS—FRAUDULENT PREFERENCE.**

The purpose of the bankruptcy act with reference to the joint assets of a bankrupt partnership is that they shall be first applied, in good faith, to the payment of partnership debts: and any scheme or device resorted to by persons contemplating bankruptcy for the purpose of charging partnership assets with individual debts is in violation of the act, and will be frustrated by the court, the law being administered in such manner as to prevent preferences, and secure the equitable distribution of the estate.

**2. SAME.**

One of the members of a firm, who was indebted to a relative on his individual note, long overdue, caused the note to be indorsed in the name of the firm, no new consideration moving to the firm. The partnership was then financially embarrassed, as the creditor knew, and within four months thereafter became bankrupt on its voluntary application. The firm had assets, but neither partner had any separate estate. *Held*, that the transaction was a fraudulent attempt to prefer the holder of the note over other creditors by converting the individual debt of the maker into a partnership obligation, and that the court of bankruptcy, under its power to marshal the assets of the bankrupts "so as to prevent preferences and secure the equitable distribution of the property" (Bankr. Act, § 5g), should not allow the proof of the note as a claim against the joint estate.

In Bankruptcy. On review of decision of referee in bankruptcy upon the allowance of claims.

Morris G. Levinson, for petitioner.
Bernard Greensfelder, for trustee.

ADAMS, District Judge. The question now before the court arises on a certificate from the referee. The facts, as they appear in the certificate, are substantially as follows: Jones & Cook were co-partners doing business under the firm name of Jones & Cook. They filed a petition in voluntary bankruptcy on April 24, 1899. In due course of proceedings the case was referred to Referee Coles. During the pendency of the case before the referee, one Epstein, a brother-in-law of bankrupt Cook, and Ada B. Jones, the wife of bankrupt Jones, presented claims for allowance, each for about $1,000, against the partnership estate. There was no individual estate of either of the parties. The facts out of which these two claims in favor of Epstein and Ada B. Jones arose are as follows: Epstein was the holder of a note for $1,000, made by Cook, dated July 17, 1896, payable one year after date. Ada B. Jones was the holder of a note for $952.50, executed by her husband for borrowed money. This note, too, was long past due at the time of the institution of the bankruptcy proceedings against the firm. In January, 1899, Epstein, who before that time had been repeatedly applied to by the firm for financial aid, was fully cognizant of their embarrassed condition. At the same time Ada B. Jones, with the knowledge of her husband, who acted as her agent, was also fully cognizant of the embarrassed condition of the firm. In this month of January it appears that Epstein requested his brother-in-law, Cook, to secure the indorsement of his then overdue note by the firm. Jones, who was then acting for his wife, consented to such an indorsement on condition that Cook would consent to the indorsement by the firm of the overdue note held by his wife. Pursuant to this accommodating arrangement, the individual note of Cook to Epstein was in fact indorsed by Jones in the firm name of Jones & Cook, and the individual note of Jones to his wife, Ada B. Jones, was likewise indorsed by Cook in the partnership name of Jones & Cook. It appears further that Epstein secured the indorsement of the firm name upon his paper for the purpose of enabling him to participate with partnership creditors in the distribution of partnership property. So far as Mrs. Jones was concerned, she must be presumed to have acted with full knowledge of all the facts which her husband possessed, and to have intended the natural and reasonable consequences of the acts taken, among which, of course, was the securing of the participation in the partnership assets for the payment of the individual debt of one of the parties. The question is whether these original individual obligations of the parties so became partnership obligations, by reason of the indorsements above referred to, as to entitle them to be proved up as partnership debts, and to participate with other partnership creditors in the partnership assets. It seems to me that a statement of this case is enough to dispose of it. Section 5, subd. "g," of the bankruptcy act, provides that the court shall marshal the assets of the partnership estate and individual assets so as to prevent prefer-

ences, and secure the equitable distribution of the property of the several estates. The same section provides that the net proceeds of the partnership property shall be appropriated to the payment of partnership debts, and the net proceeds of the individual estates of each partner to the payment of his individual debts. Any surplus of either after the satisfaction of the claims of its appropriate class (and not until then) may be employed for the satisfaction of the claims of the other class. Section 60 of the act provides that any such transfer of property, or the effect of the enforcement of such transfer, as will enable any one of the bankrupt's creditors to obtain a greater percentage of his debt than any other of such creditors of the same class, shall constitute a preference, and any such preference given within four months before the filing of the petition for adjudication of bankruptcy shall be voidable by the trustee. From these excerpts out of the bankruptcy act, as well as from others, which are not necessarily here mentioned, it is perfectly apparent what the general scheme of the bankruptcy act contemplates with regard to partnership assets, namely. that they shall be in good faith applied first to the payment of partnership debts; therefore any scheme or device resorted to by persons in contemplation of bankruptcy for the purpose of charging partnership assets with the individual liabilities of the partners is. in substance and effect, violative of the provisions of the act, and. inasmuch as the court is required to so marshal partnership assets as to secure the equitable distribution of the property of the several estates, it is clear that the court must brush away all these attempts at evasion and hold the parties to the requirements of the bankruptcy act administered broadly and equitably to accomplish the objects intended by it. The scheme resorted to, as shown in the statement of this case, by the bankrupts to foist upon the partnership assets the payment of their individual liabilities, was at least devised for an inequitable purpose within the purview of the bankruptcy act. The physical and undisputed facts surrounding the case are also in my opinion sufficient to stamp the transaction as fraudulent within the meaning of the bankruptcy act. The two indorsements were made at the time the firm was in an embarrassed financial condition. They were also made without any new consideration moving from the individual creditor to the firm. and they were made within four months prior to the time when the members of the firm petitioned voluntarily to be adjudicated bankrupts. The indorsements were also made in favor of relatives. Under this state of facts it is impossible to believe that the parties intended anything less than to gain an unconscionable and unlawful advantage over partnership creditors in violation of the spirit and meaning of the bankruptcy act. If authority for the conclusion reached in this case were needed, it can be found in Re Lane, 10 N. B. R. 135, 14 Fed. Cas. 1070 (No. 8,044). The orders made by the referee in this case disallowing the claims of Epstein and Ada B. Jones against the partnership estate. but allowing the same against the individual estates of Cook and Jones, are approved.