---

## In re HEAD et al.

(District Court, W. D. Arkansas, Texarkana Division. March 26, 1902.)

1. BANKRUPTCY—PARTNERSHIP—DISSOLUTION WHILE INSOLVENT.

The dissolution of a partnership while insolvent, and the division of the firm property between the partners, to be held as their individual property, thus giving individual creditors a preference over firm creditors, who are in justice and equity entitled to priority of payment from such property, is contrary to the whole theory of the bankruptcy law; and where such dissolution is made within four months before the firm is adjudged bankrupt it will be treated as a void transfer, under Bankr. Act 1898, § 67e, and the property in the hands of both partners as firm property, without regard to the actual intention of the partners, who must be held to have intended the necessary and inevitable consequences of their acts.

2. SAME—EXEMPTIONS.

Where, by the laws of the state, a partner cannot claim exemptions from firm property, the members of a bankrupt partnership cannot secure such exemptions by a dissolution of the firm while insolvent, and within four months prior to the bankruptcy.

In Bankruptcy. On review of action of referee disallowing exemptions claimed by bankrupts.

Scott, Lake & Head, for petitioning creditors.

W. H. Arnold, for bankrupts.

Pratt P. Bacon, in pro. per.

ROGERS, District Judge. Clyde Head and Charles P. Smith were merchants at Richmond, Ark., under the firm name and style of Head & Smith. They formed their copartnership and entered into business on the 1st of January, 1901, neither one of the partners having any capital. They purchased the remnants of two small secondhand stocks of goods on credit, and their purchases were subsequently made on credit, and the scope of their business was largely the furnishing of supplies to a large planter near by. They continued in business until the 14th of January, 1902, when they dissolved. Both parties testified that the immediate cause of their dissolution was a notice from said planter that he did not intend to patronize them during the year 1902. The partner Head took for his share 2 horses, 1 buggy, 25 bushels of corn, and some harness; the partner Smith took the merchandise and open accounts, and, indeed, all the other assets of the firm, nominally $4,000, and assumed the debts of the concern, amounting to in the neighborhood of $3,500. Smith testifies that he believed when he took the business that he could carry it on and pay the debts. He at once notified the creditors of the dissolution, and applied for an extension. He failed in that, and on the 7th of February, 1902, creditors filed their petition in bankruptcy against the firm, after both part-

ners had stated in writing that they were insolvent, and expressed a willingness to go into bankruptcy. Head was a single man; Smith married after the partnership was formed, and before it dissolved. No inventory of the stock was taken when the dissolution took place, but they estimated the stock would invoice at between $4,000 and $4,500. After the dissolution Smith bought some goods, sold others, and paid some small firm debts. Smith had no property except the assets of the dissolved firm, and no means of raising money to pay the creditors except by a sale of the goods. Head testifies that after the firm was dissolved he had no further connection with it; that he thought Smith would be able to take charge of the stock, pay the debts, and continue the business; they neither had any idea of going into bankruptcy; they both thought Smith could make sufficient arrangements to get time and convert the goods into cash; that they estimated the goods would invoice $4,250, and liabilities in the neighborhood of $3,600.

On this state of proof the referee found the partnership was insolvent when the dissolution occurred, and in that finding of facts the court concurs. If this transaction is upheld, its inevitable effect is that the mere act of the dissolution of the partnership converts all the partnership assets into individual assets of the respective parties, thereby enabling each partner, not only to claim exemptions out of the partnership assets in violation of the exemption laws of Arkansas as construed by its own courts (Richardson v. Adler, 46 Ark. 43), but also to pay their respective individual creditors out of the partnership assets to the exclusion of the partnership creditors, in plain violation of the express provisions of the bankrupt law (Bankr. Act 1898, § 5). Moreover, its effect is to enable the individual creditors to gain an advantage over the other creditors, which they did not have until the firm was dissolved. It was, in effect, a gift by the insolvent firm to the creditors of the individual members of the firm, and therefore a preference to them over the partnership creditors, who under the bankrupt law and in equity and good conscience were entitled to have the partnership assets appropriated to the payment of the partnership debts, to the exclusion of the individual creditors of the respective partners. Nor will it do to say that the members of this firm acted in good faith in what they did; that they did not intend to hinder, delay, or defraud their creditors. Every man must be held in law to have intended that which was the necessary and inevitable result of his acts, and the dissolution of an insolvent firm, if valid, is, in effect, an appropriation by the firm of the firm assets, which in equity and under the bankrupt law should be appropriated to the payment of the firm creditors to the payment of the debts of the individual members thereof. The firm, and the members thereof, must therefore be held to have intended that very result, and this the bankrupt law forbids.

The injustice of such a transaction, and the inequitable nature thereof, is, in the opinion of the court, in direct conflict with the whole theory of the bankrupt law. I am of the opinion that the dissolution of this firm, it being insolvent, and the withdrawal therefrom of assets by the respective partners, to be held as individual property, was in

violation of section 67e, Bankr. Act 1898, and that the court should set aside the terms of the dissolution, and treat the assets of the firm in the hands of both partners as partnership property, and to do otherwise is to defeat the whole spirit and policy of the bankrupt law. I am not aware that this question has been authoritatively settled by any court of appeals or by the supreme court of the United States, and there appears to be a conflict of authority upon the subject among the district courts. In support of the position assumed by the court may be cited In re Cook, Fed. Cas. No. 3,150; In re Byrne, Fed. Cas. No. 2,270; In re Sauthoff, 21 Fed. Cas. (No. 12,380); Loveland, Bankr. p. 190; Coll. Bankr. (3d Ed.) 70; In re Jones & Cook, 4 Am. Bankr. R. 141, 100 Fed. 781; In re Gillette & Prentice, 5 Am. Bankr. R. 119, 104 Fed. 769. I am aware that all of these cases are not directly in point, but they bear upon the principle involved.

The case of In re Rudnick (C. C.) 102 Fed. 751, is cited as opposing the conclusion reached by the court. The cases are not the same, but, if it may be treated as an authority against the conclusion reached by the court, I am unable to follow it. The action of the referee in disallowing the claim of both bankrupts is affirmed, and an order will be entered accordingly.

The referee will proceed in accordance with this opinion.