SARGENT v. BLAKE.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1908.)

No. 2,623.

1. BANKRUPTCY—FRAUDULENT TRANSFER UNDER SECTION 67E—PAYMENT BY INSOLVENT OF INDIVIDUAL DEBTS WITH PARTNERSHIP PROPERTY IS NOT—FACTS—CONCLUSIONS.

K. and M. were partners. They and the partnership were insolvent. K. took $234.34 with M.'s consent out of the partnership funds for himself, and in consideration thereof and of M.'s covenant to assume and pay the partnership debts conveyed to him the remainder of the partnership property and the partnership business. Immediately thereafter M. paid to Mrs. S., his mother, out of the funds which had been partnership property, $3,731.90, which he owed her for money he had borrowed to put into the partnership business. Mrs. S. did not have reasonable cause to believe that any preference was intended by this payment, nor did she have any cause to believe that it was made with intent to hinder, delay, or defraud creditors of the firm, or of the firm partners. K. and M. had no intent to hinder, delay, or defraud creditors to any greater extent than the payment to Mrs. S. would necessarily hinder or prevent them from collecting their debts. Within four months K. and M. and the partnership were adjudged bankrupts. The trustee brought suit to recover the $3,-731.90 of Mrs. S.

*Held* the trustee was not entitled to recover this money of Mrs. S.

2. SAME—INTENT TO HINDER, DELAY OR PREVENT COLLECTIONS UNLAWFULLY REQUISITE TO FRAUDULENT TRANSFER.

Intentional transfers by insolvents to secure or pay pre-existing debts within four months prior to the filing of a petition in bankruptcy which are not voidable as preferences under section 67e, or violative of other provisions of law, and which are made without intent to hinder, delay, or defraud creditors more than such securities or payments necessarily

have that effect, do not evidence an intent to hinder, delay, or defraud creditors within the meaning of section 67e of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

It is not every intent to hinder or delay creditors in collecting, or to prevent them from collecting, but an intent to do so unlawfully only that is denounced by that section.

3. SAME—SECTION 5F GOVERNS PROPERTY OF BANKRUPTS WHEN PETITION IS FILED.

Act July 1, 1898, c. 541, § 5f, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), enunciates a rule of administration of partnership and individual property, and it governs only such partnership and such individual property as the alleged bankrupts owned at the time the petition is filed and that which has been previously transferred fraudulently, or to make a voidable preference.

4. PARTNERSHIP—PARTNERS HAVE RIGHT OF DISPOSITION UNTIL PARTNERSHIP PROPERTY IS PLACED IN CUSTODY OF THE LAW—PREFERENCE OF PARTNERSHIP CREDITORS THEN FIRST ATTACHES.

Until partnership property is placed in the custody of the law by some suit or act which invokes the interposition of a court to administer it, partners, with the consent of each, have the right and the power to convert it into individual property, to apply it to the payment of individual debts in preference to the debts of the partnership, or to make any other disposition of it in good faith which does not constitute a voidable preference. Insolvency does not destroy or diminish this right of disposition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 112, 113.]

The right of the creditors of a partnership to be paid out of the partnership property in preference to the individual creditors does not attach until an application is made to some court for the administration of the partnership property, nor then, unless some partner has at that time that right, for the preferential equity of the partners is the mere right to enforce the right of the partners to compel such a preference.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 315.]

Before the partnership property is placed in custodia legis it is not held in trust for the partnership creditors, and they have no lien upon it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 315.]

5. BANKRUPTCY—PARTNERSHIP—PAYMENT OF INDIVIDUAL DEBT WITH PARTNERSHIP PROPERTY BY INSOLVENT NO EVIDENCE OF INTENT TO DEFRAUD UNDER SECTION 67E.

When all the partners consent, their application of the partnership property to the payment of an individual debt of a partner within four months of the filing of a petition in bankruptcy, and while the partners and the partnership are insolvent, does not evidence any intent to hinder, delay, or defraud the creditors of the partnership within the meaning of section 67e of the Bankruptcy Law, Act July 1, 1898, c. 541, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), and it is not void or voidable where the creditor paid has no reasonable cause to believe that a preference was intended thereby.

6. PARTNERSHIP—CONTRACT—CONSIDERATION—THE ASSUMPTION BY AN INSOLVENT OF THE DEBTS OF AN INSOLVENT PARTNERSHIP WAS A VALUABLE CONSIDERATION.

The covenant of an insolvent partner to assume and pay the debts of an insolvent partnership is a valuable consideration sufficient to support a conveyance of an interest in the partnership property.

7. SAME—ASSUMPTION OF PARTNERSHIP DEBTS CREATES NO TRUST OR LIEN IN FAVOR OF PARTNERSHIP CREDITORS.

The assumption of payment of partnership debts by one partner in consideration of an absolute conveyance of the partnership property to

him by the other creates no trust in and fastens no lien upon the property thus conveyed in favor of the partnership creditors prior to any request for the interposition of a court to administer the partnership property.

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Southwestern Division, Judicial District of Missouri.

For opinion below, see 152 Fed. 263.

Willard P. Hall (A. E. Spencer, on the brief), for appellant.

Edwin A. Krauthoff (Arthur Miller, Samuel Feller, and Karnes & New, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. In December, 1902, King and Maxwell formed a partnership in the business of dealing in paints, oils, glass, and other articles at Kansas City, in the state of Missouri, under the name of King & Maxwell Paint & Glass Company, and Maxwell borrowed $3,500 of his mother, Mrs. Sargent, to put into the business, and gave her his promissory note for the money payable with interest in three years from the date of the note. He paid the interest on it from time to time until on June 11, 1904, he paid her $2,500 of it, and on June 14, 1904, $1,231.90, the amount still owing upon it, and she surrendered the note to him. During the year 1903 and the first half of the year 1904 the company made a profit, or the partners thought it made a profit, of $3,800. Between February 1, 1904, and June 18, 1904, $9,096.08 which was derived from the sales of merchandise by the partnership was deposited in the banks to the credit of the company, and prior to June 11, 1904, all this money, except $3,-731.90 subsequently paid to Mrs. Sargent and $867.60 paid for merchandise bought, was drawn out of the bank by the partners as individuals. On June 11, 1904, or a day or two before that day, Maxwell learned that King, who had the financial management, had drawn out all the money that he had put into the firm as capital and his half of the profits, which amounted to about $4,400 in all, with the exception of $234.34. Maxwell was dissatisfied with King's action, and upon consultation they agreed that in consideration of $234.34 paid to him out of the moneys of the company, and of Maxwell's covenant to assume and pay all the firm debts, King should sell and convey his interest in the property of the company and in the business to Maxwell, should authorize Maxwell to carry on the business in the name of the company, and should agree to keep out of any like business for a year. On June 11, 1904, the $234.34 was paid to King, and he executed and delivered to Maxwell a formal bill of sale, in which the terms just stated were clearly embodied, and delivered to him the exclusive possession of the property and business of the company. At this time the partnership and each of the partners was insolvent, its liabilities were probably about $25,000 and its assets about $15,000, but each of the partners testified that he did not know or think at that time that the firm was insolvent. After Maxwell had purchased the interest of his partner in the firm property and business, and had receiv-

ed his bill of sale and exclusive possession and control of the property, and on the same day, he bought a draft for $2,500 with a check which he drew in the name of the company upon the moneys that had been theretofore deposited to its credit in a bank, and he sent this draft to his mother in part payment of his note. On June 14, 1904, he bought in the same way and sent to her another draft for $1,231.90, the balance then owing on the note she held, and she surrendered it to him paid. King testified that he never consented to the application of the partnership funds to the payment of the individual debt of Maxwell to his mother. Mrs. Sargent did not have reasonable cause to believe that it was intended by this payment to give her a preference over any other creditor of Maxwell or of the partnership. She did not know, believe, or have reasonable cause to believe that these payments were made with the intent on the part of Maxwell to hinder, delay, or defraud any of his creditors or any of the creditors of the company, or that they were made out of the funds or property of the partnership. On June 23, 1904, a petition in bankruptcy was filed, and on August 1, 1904, the partnership and the individuals King and Maxwell were adjudged bankrupts. The evidence at the final hearing in this suit disclosed no facts material to the questions before this court which have not now been stated. Upon these facts the court below rendered a decree that the amounts paid to Mrs. Sargent belonged to the estate of the partnership, "the partnership firm," in the words of the decree, "at the time of said payments by said James E. Maxwell to the defendant Laura A. Sargent, being insolvent, and the same having been so paid to the defendant in fraud of the equitable preferential right thereto of the partnership creditors of said partners" and that she should pay them back to the trustee of that estate with interest. Mrs. Sargent appealed from this decree.

This suit was instituted by the exhibition in the court below of a bill in equity against Mrs. Sargent alone, in which the trustee set forth two inconsistent causes of action, first, that Maxwell paid Mrs. Sargent $3,731.90 out of the funds of the partnership with intent to hinder, delay, or defraud its creditors at a time when it was insolvent and did not owe her anything, and that Mrs. Sargent knew this at the time she received the payment; second, that Maxwell paid her this $3,731.90 with intent to prefer her over his other creditors of the same class, that the payment did thus prefer her, and that Mrs. Sargent had reasonable cause to believe that the payment was intended to give such a preference. The proof was that the bill of sale from King to Maxwell had been made and delivered so that it had made all the debts of the company his individual debts by his assumption of them, and all its property his individual property before he paid Mrs. Sargent, and that she had no cause to believe and did not believe that any preference was intended, nor that the payment was made to hinder or defraud any creditor. The result was that at the close of the evidence the first cause of action upon the face of the transaction failed, because the payment was not made out of the funds of the partnership, and the second failed, because Mrs. Sargent had no cause to believe that a preference was intended by the payment. Bankruptcy Law of July 1, 1898, c. 541, 30 Stat. 562, § 60b (U. S. Comp. St. 1901, p. 3418, § 60b).

In order to escape from this conclusion counsel for the trustee invoke the provision of section 5f of the bankruptcy law that the net proceeds of the property of the partnership shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts, and the provisions of section 67e that transfers made by a bankrupt within four months of the filing of the petition against him with the intent on his part to hinder, delay, or defraud his creditors shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration, that unexempt property so transferred shall remain a part of the estate of the bankrupt, and shall pass to his trustee whose duty it shall be to reclaim and recover it for the benefit of the creditors, and they argue that the bill of sale from King to Maxwell, and the contract of payment of the note by Maxwell to Mrs. Sargent, were void under these sections because their effect was that property of the partnership estate was applied, after the firm and the partners were insolvent, to pay the individual debt of one of the partners.

The only evidence that Maxwell intended to hinder or defraud the creditors of the partnership is that, while the firm and the partners were insolvent, King conveyed his interest to Maxwell, and the latter paid his mother in preference to his other creditors. The only way in which Maxwell could have made this payment in bad faith would have been to have made it in whole or in part in secret trust for himself, or with the actual intent to hinder or defraud the creditors of the company more than the mere payment of the debt to his mother out of the property of the former partnership, in preference to the claims of the partnership creditors, must necessarily have delayed or prevented their collection of their claims, and there was no evidence of any such trust or intent. The evidence was that he intended to pay his mother in preference to the partnership and to other creditors, that his mother had loaned him the money to engage in and conduct the partnership business, that he had purchased the interest of his partner, and that as soon as the business and the property became his he paid her the debt which he owed her.

The facts that the payment to Mrs. Sargent had the inevitable effect to deprive the creditors of the partnership of an opportunity which they would otherwise have had to collect their claims in whole or in part, and that Maxwell knew that this would be its effect, and hence must have intended that result, do not establish the fact that he intended to hinder, delay, or defraud those creditors within the meaning of section 67e. It is every intent to hinder, delay, and defraud creditors unlawfully only, not every intent to hinder or delay them in collecting, or to prevent them from collecting, their claims that avails to avoid a transfer under that section. An insolvent debtor has the jus disponendi of his property until the commencement of proceedings in bankruptcy against him. He has the legal right to secure and pay his debts with it provided always the security or the payment is not violative of any of the acts of Congress or of any of the laws of the land. A preference of one creditor over others by such a payment or by such security, which is free from actual or constructive fraud, and

from any purpose to affect other creditors injuriously beyond the necessary effect of the security or preference, is valid and lawful, and it cannot evidence such an intent to hinder, delay, or defraud creditors as will make it void or voidable under section 67e. Coder v. Arts, 152 Fed. 943, 947, 82 C. C. A. 91; Sabin v. Columbia River Lbr. & Fuel Co., 25 Or. 15, 34 Pac. 692, 695, 42 Am. St. Rep. 756; Lampson & Powers v. Arnold, 19 Iowa, 479, 484; Stewart v. Dunham, 115 U. S. 61, 66, 5 Sup. Ct. 1163, 29 L. Ed. 329.

Since the payment and the preference were made in good faith, the only question remaining is, were they unlawful? If so, they were made with intent to hinder, delay, and defraud creditors within the meaning of the law, if not, they were made without any such intent, and they were not voidable. If Mrs. Sargent had been a creditor of the partnership, the payment could not have been avoided, and if she was paid out of the individual property of Maxwell the payment was not voidable, because she had no cause to believe that a preference was intended thereby. Did the facts that both partners and partnership were insolvent when the bill of sale and payment were made, and that the payment was made after the bill of sale was delivered out of funds which had been partnership property before King sold and conveyed his interest to Maxwell render the payment illegal and voidable? Counsel for the trustee argue that this question should be answered in the affirmative, because, as they contend, (a) the net proceeds of all the partnership property which were applied to the payment of individual debts within four months preceding the commencement of proceedings in bankruptcy against it must be appropriated to the payment of the partnership debts to the exclusion of the individual debts of the partners under section 5f; (b) that the sale by King to Maxwell was fraudulent and void; (c) that notice of the sale was not immediately given to the bank; and (d) that the assumption of the firm debts by Maxwell fastened a trust or lien upon the firm property in favor of the firm creditors. They cite, in support of their first contention, Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, Davis v. Bohle, 92 Fed. 325, 34 C. C. A. 372, In re Sievers (D. C.) 91 Fed. 366, and In re Knight (D. C.) 125 Fed. 35, in which the courts have held that, inasmuch as the making of a general assignment is an act of bankruptcy, property conveyed by such an assignment passes to the trustee in bankruptcy as of the date of the assignment as against the assignee, as against purchasers from him after the bankruptcy proceedings are instituted, and as against purchasers from him who have not paid for their purchases, where the bankruptcy proceedings are commenced within four months after the general assignments, and they argue by analogy that, wherever a payment of an individual debt is made out of the partnership property within four months of the institution of bankruptcy proceedings, the title to the trustee relates back and attaches to that property as of the date of the payment. They insist that the mere fact that partnership property is applied to the payment of individual debts within the four months constitutes the transaction a fraudulent transfer or preference although the payee has no reason to believe it was intended as such, and they cite In re Jones (D. C.) 100 Fed. 781, 783;

In re Gillette (D. C.) 104 Fed. 769, 771, 772; In re Head (D. C.) 114 Fed. 489, 490, 491; Collier on Bankruptcy (6th Ed.) p. 85; In re Johnson, Fed. Cas. No. 7,369; Collins v. Hood, Fed. Cas. No. 3,015; In re Cook, Fed. Cas. No. 3,150; In re Wilcox (D. C.) 94 Fed. 84. But the analogy between a general assignment and the application of partnership property to the payment of an individual debt, or the application of individual property to the payment of a partnership debt, for if one is fraudulent and void the other is, is neither complete nor persuasive, and the construction of section 5f here sought is neither expressed by the words of the section nor is it natural or reasonable. The parties against whom general assignments have been held futile to convey title against a trustee have all been volunteers, parties who neither paid nor surrendered anything before the bankruptcy proceedings were commenced, and as they held no higher title or better equity than the bankrupt their titles passed to the trustee. In the case at bar, on the other hand, Mrs. Sargent surrendered her note in good faith, and released her claim upon her debtor for $3,731.90 before the bankruptcy proceedings were instituted. Unless the payment was unlawful, and for that reason evidenced an intent of Maxwell to defraud his creditors, a question to be further considered, the only act of bankruptcy here was the preference of Mrs. Sargent to other creditors, which by the express terms of section 60b was not voidable because she had no reasonable cause to believe that it was intended to give her a preference thereby. A general assignment is voidable without regard to such cause to believe.

The clause of section 5f upon which counsel rely is nothing but the familiar rule of administration of partnership and individual estates which has been imported into the bankruptcy law from the courts of equity. "The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of the individual debts." The partnership property and the individual estate at what time, four months, or at some indefinite time within four months before the petition is filed, or at the time it is filed? This section treats of administration in the bankruptcy court and hence of the partnership and individual property, the title to which is in the bankrupt at the time the petition against him is presented to the court and that which he had transferred in fraud of his creditors. Section 70. Any other interpretation would produce intolerable vexation and confusion, for in the daily conduct of business partners are necessarily and constantly applying partnership property to the payment, not only of large individual obligations, but to the payment of their petty individual debts for living expenses, and are often devoting their individual property to the promotion of the partnership business and the discharge of the partnership debts. It never could have been, it never was, the intention of Congress that these transactions—these transformations of partnership into individual and of individual into partnership property within four months, or within any other time preceding the commencement of bankruptcy proceedings—should either be rescinded or avoided by subsequent adjudications in bankruptcy unless they were actually fraudulent or voidably preferential. It did

not make them fraudulent in themselves. The terms of section 5f and the natural and rational interpretation of them in the light of the general rules of law and of the entire act in which they appear, limit their application to partnership and individual property at the commencement of bankruptcy proceedings, and to property the transfer of which is fraudulent for other reasons than that partnership property was applied to the payment of individual debts, or individual property to the payment of partnership debts. This conclusion is in accord with the general principles applicable to the management and disposition of partnership property.

There are two rules of law which at different times apply to the management and disposition of the property of a partnership, first, partners own, and, with the consent of each, have the right and power to sell and dispose of the partnership property, to transform it into the individual property of one or more of the partners, to apply it or its proceeds to the payment of their individual debts in preference to those of the partnership, and to make such other honest disposition of it as they deem fit; second, in the administration of the property of a partnership in the courts the creditors of the partnership have the right to the application of the partnership property to the payment of the partnership debts in preference to the individual debts of the respective partners. The first is a rule of operation, the second a rule of administration. The first governs during the operation of the partnership business and the disposition of the partnership property by the partners, the second operates during the administration of the partnership property after it is brought into the custody of a court. The first rule prevails until by some suit or act the interposition of some court is invoked to administer the partnership property, and until that time the second rule is ineffective. Before the partnership property is placed in custodia legis for administration, it is not held in trust for the payment of the partnership creditors in preference to the creditors of the individual partners. The partnership creditors have no lien upon it, and no independent right to its application to the payment of their claims in preference to the claims of the creditors of the individual partners. Each partner, however, has the right to require the partnership property to be applied to the payment of the partnership debts in preference to the debts of the individual partners, to the end that he may not be required to pay the former out of his individual estate. The right of the creditors of the partnership to payment out of the partnership property in preference to the individual creditors is the mere right by subrogation or derivation to enforce this right of one of the partners after the partnership property has been placed in the custody of the law. Until it has been so placed each partner has plenary power at any time to release or waive this right, and if each partner has done so and at the time the property comes within the jurisdiction of a court no partner has this right, then no creditor of the partnership has it, for a stream cannot rise higher than its source.

Before the petition in bankruptcy was filed in this case, and before any of the property involved in this controversy was placed in the custody of the law, King had taken $234.34 out of the partner-

ship property, and had transformed it into his individual property, with the consent of Maxwell, and in consideration of that consent, and of Maxwell's assumption of the partnership debts, had conveyed all his interest in the remainder of the partnership property to Maxwell, and had thereby transformed it into Maxwell's individual property, and out of that individual property Maxwell had paid his individual debt to his mother. Unless these releases of these partners were voidable and were avoided, neither of them had any right thereafter, and hence none of the creditors of the partnership had any right, to the application of the $3,731.90 which had been paid to Mrs. Sargent to the payment of partnership obligations.

Counsel say that King's bill of sale and the release it evidenced were void (1) because he subsequently testified that he never consented to the payment of Mrs. Sargent out of the proceeds of the partnership property in preference to the creditors of the partnership, but his bill of sale contained that consent, for it granted full title and plenary power of disposition of all the partnership property, except the $234.-34 which he took as his share, to Maxwell, and he is estopped from avoiding the legal effect of the conveyance he made by subsequent testimony that he did not intend that it should have that effect; (2) because the assumption of the debts by the insolvent Maxwell was not a valuable consideration for King's conveyance, but while there are authorities to that effect (Darby & Co. v. Gilligan, 33 W. Va. 246, 249, 10 S. E. 400, 6 L. R. A. 740), the better reason and the weight of authority are to the contrary, for a promise to pay the debt of another, although the promisor may never be able to do so, creates a legal and a moral obligation burdensome to the promisor and presumptively beneficial to the promisee (Ex parte Peake, 1 Maddock's Chan. 191, 195, 198; Howe v. Lawrence, 9 Cush. [Mass.] 533, 556, 57 Am. Dec. 68, and cases there cited; McDonald & Co. v. Cash & Hainds, 57 Mo. App. 536, 544, and cases there cited; Kansas City Southern Ry. Co. v. O. O. & K. C. R. R. Co. [Mo. Sup., decided May 29, 1907] no opinion filed; Gratton, etc., Co. v. Troll, 77 Mo. App. 339) and the consent of Maxwell that King should withdraw the $234.34, which he took, constituted in itself a sufficient consideration to sustain the bill of sale; (3) because King's sale was not accompanied by delivery in a reasonable time and followed by an actual and continued change of possession of the things sold as required by Rev. St. Mo. 1899, § 3410 (Ann. St. 1906, p. 1940), but the evidence is that it was accompanied by such a delivery and followed by such a change of possession; (4) because notice of the purchase by Maxwell was not immediately given to the bank in which the funds of the partnership were deposited, but this fact is not material because the bank paid out the moneys upon deposit with it without objection upon drafts drawn by Maxwell in the name of the partnership, which by the terms of the bill of sale he had the right to use for a year; (5) because the assumption of the partnership debts by Maxwell created a trust in favor of the partnership creditors and imposed an equitable lien upon the partnership property for their benefit, but the weight of authority and the better reason sustain the view that it

had no such effect at any time before the $3,731.90 was paid to Mrs. Sargent or before an application was made for the interposition of a court to administer the partnership property.

There is another reason why this bill of sale cannot be disregarded in this suit. In the most favorable view to the trustee it was voidable only, not void. King, the grantor, has not set it aside. He cannot rescind or avoid it until he pays back the $234.34 which he received, and proves to the satisfaction of some court that he was induced by some misrepresentation or deceit to make it, and there is no such evidence in this case.

Finally, counsel for the trustee argue that the bill of sale and the payment must be considered as a single transaction, that they evidence an application of partnership property to the payment of an individual debt of one of the partners within four months of the bankruptcy while the partnership and the partners were insolvent, and that such an application is unlawful, and proves the intent of the debtors to hinder, delay, and defraud the creditors. Concede that the entire transaction was the intentional payment of a debt of one of the partners out of the partnership property in preference to the partnership creditors; the question then becomes, may partners lawfully appropriate partnership property to the payment of their individual debts when they and the partnership are insolvent? Authorities are cited which either directly or indirectly indicate that this question should be answered in the negative. Arnold v. Hagerman, 45 N. J. Eq. 186, 198, 199, 17 Atl. 93, 14 Am. St. Rep. 712; Flack v. Charron, 29 Md. 311; In re Estate of Edwards & Wigginton, 47 Mo. App. 307; Earle v. Art Library Pub. Co. (C. C.) 95 Fed. 544; Darby & Co. v. Gilligan, 33 W. Va. 246, 249, 10 S. E. 400, 6 L. R. A. 740; Till's Case, 3 Neb. 261; Roop v. Herron, 15 Neb. 73, 78, 80, 81, 17 N. W. 353; In re Jones (D. C.) 100 Fed. 781, 783; In re Gillette (D. C.) 104 Fed. 769, 771, 772; In re Head (D. C.) 114 Fed. 489, 490, 491; Collier on Bankruptcy (6th Ed.) p. 85; In re Johnson, Fed. Cas. No. 7,369; Collins v. Hood, Fed. Cas. No. 3.015: In re Cook, Fed. Cas. No. 3,150. The decisions in these and many other cases have been carefully considered, but because insolvency does not deprive persons of their right to dispose of their property for lawful purposes, because the application of partnership property with the consent of all the partners to the payment of the individual debts of the partners in preference to those of the partnership is a lawful purpose so long as no application for the interposition of a court to administer the property is made, and the creditors paid have no reasonable cause to believe that a preference is intended, because until the partnership property is placed in custodia legis the rule of administration does not take effect and the preferential equities of the partnership creditors do not attach to it either by way of trust or lien, and because the Supreme Court, by whose determination this court must be guided, and the weight of modern authority have so determined, we are constrained to hold and do decide that, when all the partners consent, their application of the partnership property to the payment of an individual debt of a partner within four months of the filing of a petition in bankruptcy while the partners and the partnership are insolvent does not evidence any intent

on the part of the debtors to hinder, delay, or defraud the creditors of the partnership within the meaning of section 67e of the bankruptcy law, and it is not void or voidable where the creditor paid has no reasonable cause to believe that a preference was intended by the payment. Case v. Beauregard, 99 U. S. 119, 125, 126, 127, 25 L. Ed. 370; Fitzpatrick v. Flannagan, 106 U. S. 648, 656, 1 Sup. Ct. 369, 27 L. Ed. 211; Huiskamp v. Moline Wagon Co., 121 U. S. 310, 323, 7 Sup. Ct. 899, 30 L. Ed. 971; Ex parte Peake, 1 Maddock's Chan. 191, 197, 198; Allen v. Center Valley Co., 21 Conn. 130, 54 Am. Dec. 333; Armstrong v. Fahnestock, 19 Md. 58, 65; Howe v. Lawrence, 9 Cush. (Mass.) 553, 57 Am. Dec. 68; Upson v. Arnold, 19 Ga. 190, 63 Am. Dec. 302; Goddard-Peck Grocery Co. v. McCune, 122 Mo. 426, 25 S. W. 904, 29 L. R. A. 681; Schmidlapp & Bros. v. Currie & Co., 55 Miss. 597, 599, 30 Am. Rep. 530; Fulton v. Hughes, 63 Miss. 61, 64; McDonald & Co. v. Cash & Hainds, 57 Mo. App. 536; Siegel v. Chidsey, 28 Pa. 279, 70 Am. Dec. 124; Case v. Ellis, 4 Ind. App. 224, 30 N. E. 907; Ex parte Ruffin, 6 Ves. 119; Kimball v. Thompson, 13 Metc. (Mass.) 283; Ladd v. Griswold, 9 Ill. 25, 46 Am. Dec. 443; Smith v. Edwards, 7 Humph. (Tenn.) 106, 46 Am. Dec. 71; Robb v. Mudge, 14 Gray (Mass.) 534; Baker's Appeal, 21 Pa. 76, 59 Am. Dec. 752; Sigler & Richey v. Knox Co. Bank, 8 Ohio St. 511; Wilcox v. Kellogg, 11 Ohio, 394.

In Case v. Beauregard, 99 U. S. 119, 125, 25 L. Ed. 370, a partnership composed of May, Graham, and Beauregard was insolvent, and each of its members was insolvent. It owed the Fourth National Bank of New York $235,000.89, and May owed the United States over $300,000. In this state of the case May and Graham transferred their interest in the partnership property, which consisted of a lease and the equipment of a railroad, to the United States in part payment of May's individual debt. The United States sold this interest for $228,000 to third parties who, with Beauregard, disposed of the partnership property for stock in the lessor railroad company. The bank brought a suit in equity against all these parties to set aside the transfers of the partnership property to pay the individual debt of May and to subject it, or its proceeds, to the payment of the bank's claim against the partnership on the ground that the creditors of the partnership were entitled to a preference in payment out of its property over the individual creditor of May, but the Supreme Court affirmed a decree which dismissed the bill because, before the interposition of a court was asked, the equities of the partners in the property of the partnership had been extinguished, and for that reason the derivative equity of the partnership creditor had come to an end at the same time. The court said:

"It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced. Thus, in Ex parte Ruffin, 6 Ves. 119, where from a partnership of two persons one retired, assigning the partnership property to the other, and taking a bond for the value and a covenant of indemnity against debts, it was ruled by Lord Eldon that the joint creditors had no equity attaching upon partnership effects, even remaining in specie. And such has been the rule generally accepted ever since, with the

single qualification that the assignment of the retiring partner is not mala fide."

In Schmidlapp & Bros. v. Currie & Co., 55 Miss. 597, 599, 30 Am. Rep. 530, Harney and Washington were partners. Harney owed Odeneal, but neither Washington nor the firm was indebted to him. Harney conveyed and Washington consented to a transfer of all the partnership property and business to Odeneal in part payment of his individual debt. Odeneal took Currie into partnership with him, and Schmidlapp & Bros., who were creditors of the first partnership, attached the property formerly owned by that firm, on the ground that the transfer was made with intent to hinder, delay, and defraud the creditors of the partnership, and was therefore fraudulent and void as to them. The court refused to sustain the attachment, and said:

"If at a time when the firm was still in existence, when no legal liens of any sort had attached, when it was neither bankrupt nor contemplating bankruptcy, all the members have agreed to a particular disposition of its assets, and that disposition is neither colorable nor fraudulent—that is to say, is upon a bona fide consideration, and reserves no benefit to the grantors —inasmuch as none of the partners can be heard to complain of such disposition, so none of the creditors of the firm, or of the individual members composing it, can question or attack it."

In Fulton v. Hughes, 63 Miss. 61, 65, Fulton and Hughes were partners. On March 17, 1884, Fulton sold to Hughes all the partnership property except certain accounts valued at $500, which he received to his individual use, and Hughes assumed and agreed to pay all the debts of the firm. On June 2, 1884, Hughes transferred the books and accounts, which belonged to the former firm, in payment of a debt of $955 which the firm owed his mother, and in payment of his own individual debt of $500 which he owed her. A creditor of the former firm garnisheed persons indebted to the firm, and the mother, to whom these claims had thus been assigned, appeared and contested the right of the firm creditor to collect. The court said:

"The creditors of the firm had no lien upon the goods or choses in action which had previously belonged to the firm, but which, on its dissolution, became the property of Hughes, and since he alone was owner, he might lawfully appropriate them to the payment of any debt which he owed, whether it was a debt due by the late firm or by himself alone."

To a similar effect are Roach v. Brannon, 57 Miss. 490, and Eldridge v. Phillipson, 58 Miss. 270. These cases, and the rule of the Supreme Court of Mississippi illustrated by them, have been adopted and approved by the Supreme Court of the United States in Fitzpatrick v. Flannagan, 106 U. S. 655, 658, 1 Sup. Ct. 369, 27 L. Ed. 211.

In Fitzpatrick v. Flannagan, 106 U. S. 648, 657, 1 Sup. Ct. 369, 27 L. Ed. 211, the partners and the partnership were insolvent from the commencement to the end of the transactions. One of the partners died. The surviving partner continued the business, applied some of the partnership property to the payment of his individual debt which he had incurred to borrow money to pay pressing obligations of the partnership. A creditor of the partnership attached the property on the ground that the surviving partner's transfer to pay his individual

debt was fraudulent and void as against the creditors of the partnership. The Supreme Court, speaking of this transfer which was made between the death of the deceased partner and the commencement of the attachment suit said:

"Any intermediate disposition of the property, made in good faith, even although it may have been specifically a part of the partnership assets, and even if it has been applied to the payment of his individual obligations, will be valid and effectual; and, without circumstances showing an actual intention to defraud, cannot be treated as a fraud in law upon partnership creditors," and a judgment which sustained the attachment was reversed.

The sale of the partnership property by King to Maxwell and the subsequent payment by Maxwell of his individual debt with the proceeds of a part of this property were not in themselves evidence of an intent on the part of the debtors to hinder, delay, and defraud the creditors of the partnership, the entire evidence in the case fails to convince that the debtors, or either of them, ever had any such actual intention, the creditor paid had no reasonable cause to believe that a preference was intended by the payment, and the trustee cannot recover of Mrs. Sargent the $3,731.90 which she received in payment of the note of her son. The decree below must be reversed, and the cause remanded with directions to dismiss the bill, and it is so ordered.