### DONADIO et al. v. ROBETSKY et al.

(Circuit Court of Appeals, First Circuit. February 17, 1925.)

No. 1743.

1. **Bankruptcy ☞57, 58—Transfer of property by a partnership to one of the partners, is not an act of bankruptcy.**

Payment of a note by a partnership to one of the partners is not preferential, and an act of bankruptcy, under Bankruptcy Act, § 3a (2), being Comp. St. § 9587, since he is not a creditor, nor is a transfer of partnership property to him fraudulent, and an act of bankruptcy, under section 3a (1).

2. **Bankruptcy ☞57—Adjudication of a partnership for fraudulent transfers warranted.**

An adjudication against a partnership was warranted, where it had transferred property with intent to defraud creditors to corporation of which two partners were officers, and solvency of partnership at that time was not shown.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

In the Matter of Gabriel Donadio and others, alleged bankrupts. From an order of adjudication, made on petition of Harry Robetsky and others, creditors, the alleged bankrupts appeal. Affirmed.

Joseph Jacobs, of Boston, Mass. (Samuel Jacobs and Jacobs Bros., all of Boston, Mass., on the brief), for appellants.

Harry Bergson, of Boston, Mass., for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from a decree of the District Court adjudging Paolo Montalbano, Michael Le Terza, Theodore Rutstein, and Gabriel Donadio bankrupts upon an involuntary petition filed September 20, 1923, in which the

petitioners represented that the alleged bankrupts were copartners doing business at Boston under the name and style of White House Mattress Company, and that on August 2, 1923, it committed an act of bankruptcy, in that it did—

"1. Convey, transfer, conceal, remove, or permit to be conveyed, transferred, concealed, or removed, part or whole of its property, with intent to hinder, delay, and defraud its creditors, to wit, certain merchandise, the exact quantity and identity of which is unknown to your petitioners.

"2. Transfer, while insolvent, part or whole of its property to Gabriel Donadio, with intent to prefer said Donadio over its other creditors."

Gabriel Donadio, one of the alleged bankrupts, seasonably filed a denial that he had committed the acts of bankruptcy set forth in the petition and that he was insolvent, and alleged that he ceased to be a partner of the said White House Mattress Company on May 18, 1923; that said partnership was then dissolved, and he withdrew from it, and there was an accounting and a final settlement.

By an order of court the issues raised by the denial of Donadio were referred to the referee in bankruptcy as a special master, "to ascertain and report the facts on the question of adjudication." On February 4, 1924, the master filed his report, and stated that a hearing was had on December 28 (presumably 1923), at which the petitioning creditors were represented by attorneys, as were also all of the alleged bankrupts; that it was admitted "that Montalbano, Le Terza and Rutstein were partners doing business under the name and style of the White House Mattress Company"; that their attorney, "in their behalf, consented to their adjudication"; that, as to the fourth alleged partner, Gabriel Donadio, it was admitted that he was one of the partners of the White House Mattress Company up to May 18, 1923.

The master found that Donadio continued to be a partner up to the time of the filing of the petition; that a written agreement for dissolution of the partnership, dated May 18, 1923, did not in fact work a dissolution, and was not intended as such.

It appeared from this alleged dissolution agreement that a note for the sum of $300, payable in three months, was given by the other partners to Gabriel Donadio, for which Donadio purported to have released to them all his right, title, and interest in the assets of the White House Mattress Company, and they assumed all its liabilities. This note the master found was paid on August 18, 1923, partly in cash and partly by two notes held by the partnership.

[1] As the master found that Donadio continued to be a partner, and there never had been a dissolution of the partnership, payment to him of the note which he held would not constitute a preference, because he was not a creditor of the firm. But he did find "that the payment of the note to Donadio was a fraudulent transfer, made with intent to hinder, delay, or defraud creditors," and he recommended, "if the pleadings are insufficient to permit of this finding, that the petitioners be allowed to amend the first allegation of their petition, which now alleges a fraudulent transfer of merchandise on August 2, 1923."

The testimony taken before the master does not appear in the record, and we must accept his finding that Donadio continued to be a partner, and that the written agreement of dissolution was not intended in fact to dissolve the partnership, but was a mere pretense. If the partnership had not been dissolved, the payment from the partnership assets of the note held by Donadio was not a preference or an act of bankruptcy on the part of the partnership, under section 3a (2) of the Bankruptcy Act (Comp. St. § 9587). A transfer to him as a partner of part of the assets of the partnership would not be a fraudulent transfer, and an act of bankruptcy, under section 3a (1) of the act, because, as a partner, he was entitled to all of them, and assets in his possession still remained the property of the partnership. Sargent v. Blake, 160 F. 57, 87 C. C. A. 213, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58.

[2] But the master reported that soon after this alleged dissolution Donadio engaged in a similar business to that of the White House Mattress Company under the name of the Sunshine Bedding Supply Company, which was really the business of Donadio, and that this company had close business dealings with the White House Mattress Company; that on August 9, 1923, a new company was incorporated under the name of the Home Furniture Company, of which Donadio was president, and a brother of the alleged bankrupt, Rutstein, one of the directors; that this company had close financial relations with the White House Mattress Company, purchasing mattresses and furniture from it, and from the Sunshine Bedding Supply Company; that "large quantities of merchandise, consisting

of mattresses and furniture, were purchased ostensibly by the alleged bankrupts, the White House Mattress Company, and never paid for; that this merchandise was immediately shipped out to the two companies operated by Donadio, known as the Sunshine Bedding Supply Company and the Home Furniture Company, and that these sales were colorable and part of the fraudulent conspiracy" to defraud creditors, stated in his report to exist and which appears in the paragraph hereinafter quoted therefrom, and he recommended "that immediate steps be taken to recover this merchandise."

Transfers to Donadio under a new name (the Sunshine Bedding Supply Company) were not conveyances in fraud of creditors; he remained liable in solido for all the debt of the partnership. Transfers to the Home Furniture Company vested title to partnership assets in an outside legal entity.

We have, then, a finding, on this record conclusive, that the respondents had within four months of the filing date made various transfers to the Home Furniture Company with intent to defraud their creditors. Such transfers were made shortly after August 9, 1923. This is enough to sustain the decree of adjudication, unless the respondents properly pleaded and proved solvency under section 3 (c). Donadio did, in connection with his denial that he was a partner, deny that he was insolvent. If we construe this as a denial of the insolvency of the partnership, of which he was found to be a member, the question then arises as to whether this issue had been disposed of by the master. We think it has, for he found that:

"The testimony of Donadio, Montalbano and Rutstein (Le Terza not being present to testify), their demeanor on the stand, the profound and almost complete ignorance of the business which they professed, their failure to account for their books of account, which had disappeared, their professed ignorance of their assets and liabilities at the time of the alleged dissolution, their failure to give notice to creditors, the relation of the three companies to each other, are such that the strongest inference of lack of good faith and of their veracity, and of a conspiracy to defraud creditors, may well be drawn, and I make such inference."

He also reported that Donadio testified to the effect that he did not know or care what the assets or liabilities of the White House Mattress Company were. This amounts to a finding that Donadio had failed to sustain the burden of proof by showing that either he or the firm were solvent. Section 3 (c).

The general result is that the master found transfers made within four months of the filing date in fraud of creditors by a partnership which was not shown to be solvent. Section 3a (1); In re West, 108 F. 940, 48 C. C. A. 155. This is enough to sustain the decree of adjudication. It is true that the allegations of fraudulent transfers were general, and that on objection seasonably made the petitioners should have been ordered to file a bill of particulars (or allowed to amend). But the respondents went on trial without objecting that the petition was too general, or in any way insufficient, as they might have done by motion to dismiss, motion for specifications, or in the answer.

The decree of the District Court is affirmed.